**In re Richard M. CHASE and Paula A. Chase, Debtors.**

**Bankruptcy No. 92–10260–JNG.**

United States Bankruptcy Court, D. Massachusetts.

Dec. 1, 1992.

Michael Palmer, Middlebury, Vt., for debtors.

Grace Gonzalez Connolly, Newburyport, Mass., for movant, Newburyport Five Cents Sav. Bank.

MEMORANDUM

JAMES A. GOODMAN, Chief Judge.

I. INTRODUCTION

The matter before the Court is the "Motion for Sanctions Pursuant to Rule 9011 of the Bankruptcy Rules" filed by the Newburyport Five Cents Savings Bank (the "Bank") against Richard and Paula Chase (the "Debtors") and their counsel, Michael Palmer, Esq. ("Palmer"). The Bank filed its motion in response to a "Withdrawal of Request to Dismiss and Motion to Convert to Chapter 11" filed by the Debtors on September 3, 1992.

II. FACTS

The Debtors commenced the above-captioned Chapter 12 proceeding on January 13, 1992. Pursuant to Section 1221 of the Bankruptcy Code, they were required to "file a plan not later than 90 days after the order for relief...." 11 U.S.C. § 1221. Although the Debtors failed to timely file a plan, they filed a motion to extend the time

for filing a plan on April 14, 1992. The case docket reflects that the Court did not act on this motion. On April 28, 1992, the Debtors filed their first Chapter 12 plan. Four creditors, including Donahue Electric, Sanford Construction Company, the City of Newburyport and the Bank, filed objections to confirmation.

The Court scheduled a confirmation hearing for June 17, 1992. At the Debtors' request, the Court continued the hearing until July 17, 1992. At the July 17, 1992 hearing, the Court ordered the Debtors to file an amended plan. The Bank indicated that it would be filing a motion to dismiss. The Court stated that it would hear the Bank's motion at the same time as the continued confirmation hearing—August 27, 1992. The parties were informed that the August 27th hearing would be an evidentiary one.

On July 28, 1992, the Bank filed two motions to dismiss, one for cause, notably unreasonable delay that was prejudicial to creditors, and the other on grounds that the Debtors were ineligible for Chapter 12 relief.[1] The Bank alleged that the Debtors failed to demonstrate in their schedules and plan that they qualified for Chapter 12 relief. Specifically, the Bank stated that the Debtors failed to show that more than 50% of their income in 1991 was from farming operations, that 80% of their debt arose from farming operations, and that their income was sufficiently stable to make plan payments. The Bank noted that the Debtors' $600 per month income after expenses, without considering debt service, was insufficient to fund a feasible plan.

The Debtors filed detailed objections to both motions. They indicated that their plan was predicated upon the sale of certain real estate to the City of Newburyport.

On July 22, 1992, the Debtors filed their First Amended Chapter 12 Plan. Like their first plan, their amended plan was not received enthusiastically by creditors. The same four creditors filed objections and were joined by the United States of America/Farmers Home Administration. The Debtors then filed a Second Amended Plan on August 26, 1992, one day before the evidentiary hearing, and then a Third Amended Plan on the day of the evidentiary hearing. In the meantime, on August 3, 1992, the Bank filed two motions for relief from the automatic stay.

At the August 27, 1992 hearing, the Court initially considered the Bank's motion to dismiss based upon the Debtors ineligibility for Chapter 12 relief. The Court focused on the requirement that "not less than 80 percent of [the Debtors'] aggregate noncontingent, liquidated debts (excluding a debt for the principal residence of ... such individual and spouse unless such debt arises out of a farming operation), on the date the case is filed, arise out of a farming operation owned or operated by ... such individual and spouse...." 11 U.S.C. § 101(18)(A). The Court heard oral argument for several minutes and then took a five minute recess. Immediately upon resumption of the hearing, the following colloquy took place:

MR. PALMER: If I may, the debtors at this time request that the case be dismissed pursuant to 11 USC, Section 1208(b).

THE COURT: The section again please?

MR. PALMER: Section 1208(b).

THE COURT: Yes. Is there anyone in the courtroom who would like to be heard objecting?

MR. SZABO [the Chapter 12 trustee]: No objection, Judge, only, Judge, respectfully ask him to maybe withdraw

---

1. Section 109(f) of the Bankruptcy Code provides that "[o]nly a family farmer with a regular annual income may be a debtor under Chapter 12 of this title." 11 U.S.C. § 109(f). Sections 101(18), (19), (20) and (21) of the Bankruptcy Code define "family farmer," "family farmer with regular annual income," "farmer," and "farming operations," respectively. In short, Chapter 12 debtors must show that their aggregate debts do not exceed $1.5 million; that not

less than 80% of their aggregate noncontingent liquidated debts (excluding debt for their principal residence unless such debt arises out of a farming operation) arise out of a farming operation; that more than 50% of their gross income for the taxable year preceding the taxable year the case was filed was received from such farming operation; and that their annual income is sufficiently stable and regular to enable them to make payments under a Chapter 12 plan.

your motion, right, so that the Judge can enter a voluntary dismissal.

MS. CONNOLLY [Bank counsel]: The bank would be willing to do that, your Honor.

THE COURT: Anyone else wish to be heard? You wish to dismiss this case?

MR. PALMER: Yes, your Honor.

THE COURT: On what basis?

MR. PALMER: I don't believe we have to give a basis, your Honor.

THE COURT: Well, I won't argue the semantics over that.....I won't argue the point. This case, then, is withdrawn as a matter of preference by the debtor. I will allow it to be dismissed.

MR. PALMER: I believe the operative word is dismissed, your Honor.

THE COURT: Yes, it'll be dismissed. You'll file with the Court an appropriate form of order.

MR. PALMER: I'll do that right away, your Honor....

Debtors' counsel failed to submit a form of order. Instead, on September 3, 1992, the Debtors filed the "Withdrawal of Request to Dismiss and Motion to Convert to Chapter 11." As grounds for the pleading, the Debtors and their counsel cited their understanding that they had an agreement with the Bank for the payment of its debt, as well as their conviction that they would be able to obtain the consent of the other objecting creditors to their proposals. Thus, they determined on August 27, 1992 that "it would save all parties and the Court additional time and expense if they simply requested that the Chapter 12 be dismissed so that they could implement an agreement with the Bank and the other creditors outside of bankruptcy." In the motion and the affidavit of their counsel, they expressed surprise that in fact there was no agreement with the Bank. However, Debtors' counsel did concede in his affidavit that "[c]ounsel for the Bank stated that it was important to the Bank not to have any further continuances in the case and that it would proceed with its motion to dismiss for lack of eligibility in the event that the Court was not prepared to confirm a plan of reorganization on August 26,

1992 [sic]." Nevertheless, counsel stated that he was not informed of the rejection of "the agreement to liquidate the property and pay the Bank as provided in the Third Amended Plan of Reorganization."

In response, the Bank filed both an objection to the Debtor's September 3, 1992 pleading and the motion for sanctions. In its motion, the Bank emphatically rejected any notion that an agreement existed and submitted affidavits in support of this assertion. Moreover, the Bank pointed out that even if Debtors' counsel thought there was an agreement, such an understanding was contraindicated by counsel's concomitant recognition that the Third Amended Plan could not be confirmed on the day it was filed and the Bank was steadfastly refusing to assent to any further continuances. Thus, the Bank concluded that the Debtors' Withdrawal of Request to Dismiss and to Convert to Chapter 11 was not well grounded in fact or in law and was interposed for the purpose of delaying the foreclosure process.

On September 25, 1992, the Court conducted a hearing on the Debtors' Withdrawal of Request to Dismiss and the Bank's motion for sanctions. The Court refused the Debtors' request to withdraw the voluntary dismissal and took the Bank's motion for sanctions under advisement. The Court directed the parties to file briefs on the sanctions issue. Both parties filed briefs, and Bank counsel also filed an affidavit coupled with an itemized bill detailing the charges incurred by the Bank between September 17 and October 2, 1992. The bill indicates that counsel spent 47.8 hours at the rate of $125 per hour responding to the Debtors' motion and incurred expenses in the amount of $141.79 for a total of $6,164.59 in fees and expenses.

## III. DISCUSSION

Section 1208(b) of the Bankruptcy Code permits Chapter 12 debtors to dismiss their cases at any time, if their cases have not been converted under sections 706 or 1112. *See* 11 U.S.C. § 1208(b). Since the Bank had filed motions for relief from stay on

August 3, 1992 and the Debtors' dismissal was voluntary, section 109(g) of the Bankruptcy Code barred the Debtors from filing another petition for 180 days from August 27, 1992. 11 U.S.C. § 109(g).[2] Accordingly, absent the Court's permission to vacate its allowance of the dismissal—relief requested by the Debtors by way of their "Withdrawal of Request to Dismiss," the Debtors were prohibited from filing another petition for 180 days.

With this as a backdrop, the Court must determine whether the filing of the Withdrawal of Request to Dismiss and to Convert to Chapter 11, was well-grounded in fact or was interposed to hinder and delay the Bank. Federal Rule of Bankruptcy Procedure 9011 governs. It provides in relevant part:

> The signature of an attorney or a party constitutes a certificate that the attorney or party has read the document; that to the best of the attorney's party's knowledge, information, and belief formed after reasonable inquiry it is well-grounded in fact and is warranted by existing law or a good faith argument for its extension, modification or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass, or to cause unnecessary delay, or needless increase in the cost of litigation or administration of the case.... If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including reasonable attorney fees.

The Court's review of the transcript from the August 27, 1992 hearing compels the conclusion that the Bank's assertion that there was no agreement between the parties is correct. Any understanding that an agreement existed, based upon circumstantial evidence from meetings and fax communications between the parties prior to the August 27, 1992, hearing, should have been dispelled by the Bank's position at the hearing. Counsel to the Bank responded to the Court's inquiries about the Debtors eligibility for Chapter 12 and the source of their obligations in a manner indicating that the Bank was vigorously pursuing its motion to dismiss. In light of this conduct, the Bank's alleged failure to explicitly inform counsel of the absence of an agreement does not persuade the Court that the Debtors and their counsel were justified in believing an agreement existed.

Although Debtors' counsel suggests that he appears to have been mistaken about the existence of an agreement, after reviewing the transcript from the August 27, 1992 hearing, the Court does not find that he had any reasonable basis for believing that the Bank was willing to work with the Debtors toward an orderly liquidation of their property. The Court is unable to detect prior to the five minute recess any suggestion that the Bank was willing to either consent to the Debtors third Chapter 12 plan (or any other plan the Debtors might propose) or agree to a continuance. If the parties were in agreement, the entire oral argument relative to eligibility would have been unnecessary because that issue would have been irrelevant in light of a consensual Third Amended Plan. If there had been an agreement to work things out outside of the bankruptcy forum, the parties in all likelihood would have reported the agreement at the outset of the hearing and dispensed with oral argument. Instead, both Bank counsel and Debtors' counsel engaged in oral argument for at least five and maybe ten minutes prior to the recess (the transcript of the hearing up to the point of the recess is 21 and ½ pages long). Accordingly, the Court concludes

---

**2.** Section 109(g) provides in relevant part:
(g) Notwithstanding any other provisions of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if– ...

(2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title. 11 U.S.C. § 109(g).

that the Debtors' and their counsel's assertions that they believed that they had an agreement with the Bank and were surprised to learn otherwise was not well-grounded in fact.

The Court is convinced that the real reason the Debtors moved to dismiss their Chapter 12 case on August 27, 1992 was that, as even they have admitted, "the likely outcome of that hearing would be a dismissal based on lack of eligibility." The Court is further convinced that the Withdrawal of Request to Dismiss was filed, not because of a misunderstanding about an agreement, but because the Debtors, perhaps unintentionally, had foreclosed the possibility of an immediate refiling by voluntarily dismissing their case after the filing of motions for relief from stay. *See* 11 U.S.C. § 109(g). Consequently, the Court turns to the issue of the appropriate sanction for the filing of the September 3, 1992 pleading.

The Court is not persuaded that the conduct of the Debtors and their counsel warrant sanctions in the amount of $6,164.59. Although the pleading at issue was not well grounded in fact and certainly resulted in hindering the Bank's efforts to collect its debt, the number of hours spent by the Bank's attorneys as set forth in the itemized bill attached to Bank counsel's affidavit appear to be inflated. For example, the time spent reviewing the Debtors' Withdrawal of Request to Dismiss and Motion to Convert to Chapter 11, researching case law under 11 U.S.C. §§ 109(g) and 1208(a), reading the transcript from the August 27, 1992 hearing and drafting an objection—10.5 hours—appears to be excessive. Likewise, 18.6 hours preparing the motion for sanctions and affidavits, together with a few phone calls and more research appears excessive, as does 8.7 hours drafting the brief in support of sanctions.

Upon consideration of the briefs and the history of the case, the Court hereby sanctions counsel to the Debtors and the Debtors. The Court orders counsel to the Debtors to forthwith pay the Bank's attorneys' fees in the amount of $1,500 and orders the Debtors to forthwith pay the Bank its costs

in the amount of $141.79. Counsel and the Debtors shall file, within 15 days of the date of this memorandum, affidavits stating that they have paid the Bank the sanction awards.

The foregoing shall constitute findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. An appropriate order shall issue.