In re Ray Gordon DAVENPORT and
Carolyn Jean Davenport, Debtors.

Bankruptcy No. 989–02119–12.

United States Bankruptcy Court,
E.D. California,
Modesto Division.

Aug. 8, 1994.

Ray Gordon Davenport and Carolyn Jean Davenport, in pro. per.

Thomas G. Mouzes, Hauser & Mouzes, Woodbridge, CA, for Western Farm Credit Bank.

AMENDED MEMORANDUM DECISION ON WESTERN FARM CREDIT BANK'S MOTION TO ALTER OR AMEND ORDER DISMISSING CASE AND/OR FOR RECONSIDERATION

MICHAEL S. McMANUS, Bankruptcy Judge.

This matter comes before the court on Western Farm Credit Bank's ("Bank") motion to alter or amend and/or for reconsideration of the court's order dismissing debtors' Chapter 12 case.

*Introduction*

After four years as debtors under Chapter 12 and approximately one year operating under a confirmed plan, debtors filed a request for voluntary dismissal under section 1208(b) of the Bankruptcy Code. Debtors struggled as reorganized debtors and for the most part failed to make any payments as required under their plan. Debtors' request for voluntary dismissal came after debtors' failure to obtain modification of their confirmed plan, after Bank, their primary secured creditor, obtained relief from stay, and in the midst of serious allegations of fraud by Bank which were first raised during proceedings in connection with debtors' motion to modify their confirmed plan.

On February 16, 1994, as soon as Bank became aware of debtors' request for dismissal, Bank requested that the court hold

debtors' voluntary dismissal in abeyance to provide Bank a period of time to file a counter-motion to convert the case to Chapter 7. Bank's request was supported by serious allegations of debtors' fraud and misconduct committed during the pendency of their Chapter 12 case. The court granted Bank's request on the basis of authority from other circuits establishing that a debtor's motion to dismiss under section 1208(b) could be staged pending resolution of a creditor's motion to convert under section 1208(d) and the seriousness of the allegations made.

On March 9, 1994, Bank filed its formal counter-motion to convert debtors' case to Chapter 7 under section 1208(d) for fraud committed in connection with the case. On March 11, 1994, over the opposition of debtors, the court issued a formal order preliminarily determining that debtors' dismissal of the case could be delayed to allow investigation of alleged fraud. The court also required debtors to provide an accounting of their Chapter 12 case. The court, again, relied on case law developed from other circuits. The court continued the matter to April 19, 1994, for an evidentiary hearing.

On April 12, 1994, seven days before the evidentiary hearing on Bank's counter-motion, the court issued a memorandum decision directing dismissal of the case based on the recent Ninth Circuit Bankruptcy Appellate Panel decision in *In re Beatty*, 162 B.R. 853 (9th Cir. BAP 1994). In *Beatty*, the Appellate Panel construed a Chapter 13 debtor's right to dismiss as absolute even where a competing creditor's motion to convert was pending. Debtors' case was subsequently dismissed by order dated April 18, 1994.

Bank filed a timely motion to alter or amend order and/or for reconsideration. In its motion, Bank requests that the court vacate its memorandum decision and order dismissing debtors' case and set its counter-motion for trial. Bank's moving papers set forth a detailed compilation of debtors' alleged fraudulent acts committed during ad-

ministration of their case and present argument that the court erroneously applied and relied on the Appellate Panel's decision in *Beatty* to dismiss debtors' case.

Debtors respond that their case should remain dismissed as the court correctly read and applied *Beatty* [1].

### Discussion
#### I.

The issue before the court on reconsideration is whether the court may ignore or qualify the plain language of section 1208(b), which provides a Chapter 12 debtor an unqualified right to dismissal, where a creditor has filed a competing motion to convert the case to Chapter 7 based on allegations of fraud in connection with the case.

The competing statutory provisions provide as follows:

On request of the debtor *at any time*, if the case has not been converted under section 706 or 1112 of this title, the court *shall* dismiss a case under this chapter. Any waiver of the right to dismiss under this subsection is unenforceable.

11 U.S.C. § 1208(b) (emphasis added).

On request of a party in interest, and *after notice and a hearing*, the court *may* dismiss a case under this chapter or convert a case under this chapter to a case under chapter 7 of this title upon a showing that the debtor has committed fraud in connection with the case.

11 U.S.C. § 1208(d) (emphasis added).

Notwithstanding the mandatory language of section 1208(b), which ostensibly requires the court to dismiss a case upon application of a Chapter 12 debtor, several courts have determined that a debtor's right to dismiss can be effectively "trumped" by an interested party's motion to convert to Chapter 7 under section 1208(d). *In re Graven*, 936 F.2d 378 (8th Cir.1991); *Foster v. North Texas Prod. Credit Assn.*, 121 B.R. 961 (N.D.Tex.1990), *aff'd*, 945 F.2d 400 (5th Cir.1991), *cert. de-*

---

1. Debtors also raised several other arguments in their response along with filing several evidentiary objections to the evidence presented by Bank. Debtors' other arguments were resolved in open court. As to the evidentiary objections, because

the court is making no factual determinations with respect to Bank's evidentiary presentation of fraud, these objections will not be discussed further.

*nied,* — U.S. ——, 112 S.Ct. 972, 117 L.Ed.2d 136 (1992); *see In re Cotton,* 992 F.2d 311, 313 (11th Cir.1993); *In re Goza,* 142 B.R. 766 (Bankr.S.D.Miss.1992).

■ Prior to issuing its memorandum decision directing dismissal of debtors' case, the court twice accepted this line of cases urged by Bank. Bank again urges the court to rely on this case law a third time to hold debtors' dismissal in abeyance. However, upon additional reflection and consideration of the case law, including the Bankruptcy Appellate Panel's decision in *In re Beatty,* 162 B.R. 853 (9th Cir. BAP 1994), the court rejects this authority in favor of determining debtors' right to dismiss under section 1208(b) to be unqualified.

The Eighth Circuit's decision in *In re Graven,* 936 F.2d 378 (8th Cir.1991), serves as the most analytically complete and leading case determining a creditor's right to convert for fraud under section 1208(d) superior to a debtor's right to dismiss under section 1208(b).[2] In *Graven,* the bankruptcy court found that the debtor's pre-petition transfer of assets, among other things, evidenced the debtor's intent to delay and defraud creditors. In light of these facts, the bankruptcy court granted a creditor's motion to convert over a competing motion by the debtor to dismiss which was held in abeyance pending the creditor's motion. Both the district court and the Eighth Circuit affirmed.

The Eighth Circuit addressed the tension between the debtor's absolute right to dismiss under section 1208(b) and the creditor's right to seek conversion for fraud under section 1208(d) holding that, where the debtor commits fraud in connection with the case and then seeks to use section 1208(b) to avoid the consequences, the purposes of the Bankruptcy Code to protect the "honest but unfortunate debtor" are thwarted and the debtor's absolute power to dismiss should yield to the creditor's motion to convert.

The Supreme Court's statements make clear that the purpose of the bankruptcy code is to protect the honest debtor, not to provide a shield for those who exploit the code's protection then seek to escape judicial authority when their fraudulent schemes are exposed. As the district court in this case aptly stated:

To adopt the interpretation of § 1208(b) and (d) favored by the debtors ... would lead to endless abuse of the bankruptcy process ... and would clearly thwart the clear purpose of Chapter 12, which is to provide relief for the honest debtor, and the intent of Congress in adopting § 1208(d).

*Graven,* 936 F.2d at 385 (quoting W.D.Mo. slip op. at 12) (omissions in original).

Even though there is no legislative history directly addressing the potential conflict between section 1208(b) and (d), the court gleaned from the scant history on Chapter 12 and section 1208(d)[3] that "the broad purpose

**2.** Prior to *Graven* only one reported decision directly addressed the conflict between sections 1208(b) and (d). The court in *Foster v. North Texas Production Credit Association,* 121 B.R. 961 (N.D.Tex.1990), determined without extensive analysis that where the facts show abuse of the legal process through fraud, the court has the authority to convert under section 1208(d) even though a section 1208(b) motion by debtor to dismiss has been filed.

Since *Graven,* at least two courts have expressly adopted the Eighth Circuit's reasoning and result. The Eleventh Circuit in *In re Cotton,* 992 F.2d 311 (11th Cir.1993), relied on *Graven* to hold that the debtor had the right to immediate dismissal of the case under section 1208(b) only if the case had not been converted to an involuntary proceeding and the debtor had not engaged in fraud that would make immediate dismissal unjust. The bankruptcy court in *In re Goza,* 142 B.R. 766 (Bankr.S.D.Miss.1992), similarly relied on and followed *Graven* holding that a debtor's section 1208(b) motion could be held in abey-

ance pending submission of an accounting pursuant to the Chapter 12 trustees' request to ensure no fraud had been committed during the case.

**3.** The court relied first on the House Conference Report on Chapter 12 which stated that Chapter 12 "offers family farmers the important protection from creditors that bankruptcy provides while, at the same time, *preventing abuse of the system and ensuring that farm lenders receive a fair repayment.*" H.R.Conf.Rep. No. 99–958, 99th Cong., 2d Sess. 48, *reprinted in* 1986 U.S.Code Cong. & Admin.News 5246, 5249 (emphasis as appearing in *Graven* ). The court further cited Senator Grassley's statement in the Congressional Record in specific reference to section 1208(d) that "[i]f fraud is found, the case will be dismissed or converted to Chapter 7. This encourages good faith, and honest dealing by the debtor throughout the case." 132 Cong. Rec. 28, 593 (1986).

of the bankruptcy code, including Chapter 12, is best served by interpreting section 1208(d) to allow a court to convert a case to Chapter 7 upon a showing of fraud even though a debtor has moved for dismissal under subsection (b)." *Graven*, 936 F.2d at 385.

The court concluded its analysis opining that there really was no conflict between section 1208(b) and (d) as "[n]othing in subsection (b) requires that a court act immediately upon a debtor's request for a voluntary dismissal." *Graven*, 936 F.2d at 385 (citing *In re Tyndall*, 97 B.R. 266, 268 (Bankr. E.D.N.C.1989)). In further support of this proposition, the court noted that, except for dismissals under section 707(b) and 1307(b), Bankruptcy Rule 1017(a) provided for dismissal only after hearing on notice to all creditors. *Graven*, 936 F.2d at 386.

Although this court finds the reasoning in *Graven* attractive, it is not compelling.

■ First, *Graven* ignores the plain language of the Code. The interpretation of a statutory provision begins with "the language of the statute itself." *Pennsylvania Public Welfare Dep't v. Davenport*, 495 U.S. 552, 557–58, 110 S.Ct. 2126, 2130, 109 L.Ed.2d 588 (1990) (citing *Landreth Timber Co. v. Landreth*, 471 U.S. 681, 685, 105 S.Ct. 2297, 2301, 85 L.Ed.2d 692 (1985)). If the statutory language is unambiguous, the court does not need to inquire further. *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, ——, 112 S.Ct. 1146, 1149–50, 117 L.Ed.2d 391 (1992). The functional language in section 1208(b) provides that upon the debtor's request for dismissal "at any time" the court "shall" dismiss the case. There is very little room for ambiguity on what this statute means. "At any time" clearly indicates that the debtor may request dismissal at any stage of the proceedings without notice and a hearing. "Shall" clearly indicates that the court's dismissal is mandatory.

The *Graven* court's opinion that nothing in this language requires immediate action asks too much specificity from Congress. The language at the very least strongly infers immediate, mandatory action. In addition,

the Eighth Circuit's reliance on the Bankruptcy Rules is now inapposite. Since *Graven* was decided, rule 1017(a) was amended to provide that motions under 1208(b) are also excepted from the notice and hearing provisions. Although rule 1017(d) provides that a section 1208(b) request for dismissal is to be accomplished by motion filed and served as required by rule 9013, rule 9013 provides that matters that do not require notice may be submitted ex parte. In any event, to the extent rules promulgated by the Supreme Court abridge or modify a debtor's substantive right as granted by Congress, "the statute must take precedence." *In re Cisneros*, 994 F.2d 1462, 1465 (9th Cir.1993); 28 U.S.C. § 2075.

■ More specifically, to interpret "shall" as "may" thereby giving the court discretion to dismiss, as *Graven* does, is a strained reading. There is perhaps no less ambiguous word used in statutes than "shall." "Shall" implies a command. *See Escoe v. Zerbst*, 295 U.S. 490, 493, 55 S.Ct. 818, 819–20, 79 L.Ed. 1566 (1935); *see also United States v. Rodgers*, 461 U.S. 677, 706–09, 103 S.Ct. 2132, 2149–51, 76 L.Ed.2d 236 (1983) (discussing congressional change in legislation *requiring* court to order a sale of property to satisfy tax debt under predecessor statute which used the term "shall" to allowing court discretion to order a sale by current version using the term "may"). Congress used both "may" and "shall" throughout the Code, and the clear inference is that they recognized the import of their word choice. *See generally Anderson v. Yungkau*, 329 U.S. 482, 485, 67 S.Ct. 428, 430, 91 L.Ed. 436 (1947) ("When 'may' and 'shall' are used in the same rule, the normal inference is that each is used in its usual sense.").

■ Second, even if the language were not clear, the court is not convinced that principles governing interpretation of ambiguous statutory provisions would support the statutory interpretation in *Graven*. The court is cognizant of Supreme Court authority adopting a view that legislative history and the structure, object, and policy of statutory provisions must be considered when construing

the plain language of the Code. *See, e.g., United States v. Ron Pair,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) ("The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'") (quoting *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)); *Patterson v. Shumate,* —— U.S. ——, ——–——, 112 S.Ct. 2242, 2246–47, 119 L.Ed.2d 519 (1992) (noting that court may look to structure of the law as a whole and its object and policy in interpreting statutory provisions). Indeed, the Eighth Circuit in *Graven* focused on the scant legislative history and general congressional purpose and intent to provide assistance only to honest debtors and prevent fraud and abuse as authority to ignore the mandatory language of section 1208(b). The court agrees that there is a clear object and policy behind the bankruptcy laws to prevent fraudulent debtors from abusing the protection of the Code, but disagrees that this policy is strong enough to strike "shall" out of section 1208(b) and replace it with "may."

Given the clarity of the statutory text, an "exceptionally heavy" burden must be met to prove Congress intended the language to be interpreted otherwise. *See Union Bank v. Wolas,* 502 U.S. 151, ——, 112 S.Ct. 527, 530, 116 L.Ed.2d 514 (1991). Sole reliance on the legislative history of section 1208(d) and on the "honest, but unfortunate" debtor policy behind the Code is insufficient to meet this burden when viewed in greater context. The legislative history of section 1208(d) clearly mentions that the statute's provisions are to encourage honesty and prevent debtor fraud in connection with the case—this much is obvious from the language of the statute itself.[4] What is not mentioned nor obvious, however, is that this policy should take precedence over the policy behind section 1208(b) to allow the debtor, who voluntarily commenced his Chapter 12 case, to voluntarily dismiss it at any time.

Under the Code, bankruptcy for a family farmer is, with one exception, a wholly voluntary proposition. Congress was careful to except family farmers from section 303 regarding commencement of involuntary proceedings. In addition, even if a family farmer chooses to file bankruptcy under Chapter 11 or Chapter 13, conversion to Chapter 7 must be voluntary. 11 U.S.C. §§ 1112(e), 1307(e). Thus, the family farmer debtor guilty of fraud in a Chapter 11 or 13 case (sections 1112 and 1307 allow conversion to Chapter 7 for "cause" including fraud in connection with the case) *may* have his case involuntarily dismissed, but *could not* have his case converted without consent. The only involuntary provision with respect to family farmers is section 1208(d) which allows an interested party to seek conversion for fraud committed in connection with a voluntarily commenced Chapter 12 case.

Bank suggests that since section 1208(d) is the only section that allows involuntary conversion of a family farmer case to Chapter 7, this shows congressional objective or policy that the debtor's absolute right to voluntarily get out of Chapter 12 is or should be construed as qualified. Courts following *Graven* would likely agree. While this reasoning is somewhat compelling, one could just as forcefully argue that Congress intentionally provided a voluntary "out" for Chapter 12 debtors facing conversion by allowing them the absolute and unqualified right to dismiss at any time. This argument is equally consistent with the congressional drafting and intent to protect family farmers from nonconsensual Chapter 7 liquidation.

There are other arguments and counter-arguments that may be advanced, but the above analysis is illustrative of the fact that the policy to prevent fraud and protect only the "honest but unfortunate debtor" must be viewed in the context of the other policies and objectives of the Code—such as purposeful protection of the family farmer from being forced into liquidation proceedings without consent. Where neither the Code nor the legislative history clearly address and resolve the conflict and the policy and objectives behind the Code are open to interpretation, the court will not assume what Con-

---

4. *See* note 3.

gress specifically intended. Accordingly, the court does not view the legislative history nor congressional policy as construed by the Eighth Circuit in *Graven* to meet the exceptionally heavy burden which this court would deem necessary to suggest that "shall" should be interpreted as a discretionary term.

Third, the recent Ninth Circuit Bankruptcy Appellate Panel decision in *In re Beatty*, 162 B.R. 853 (9th Cir. BAP 1994), persuades the court that a debtor's right to dismiss under section 1208(b) is correctly determined superior to a competing creditor's motion to convert under section 1208(d). In *Beatty*, the Appellate Panel addressed the identical issue presented in this case—except in the context of a Chapter 13 case.[5] Pursuant to a creditor's motion to convert the debtor's Chapter 13 case to Chapter 7 under section 1307(c), the bankruptcy court converted the case—announcing its decision in open court. Prior to signing and entry of the order of conversion, the debtor filed an application for voluntary dismissal under section 1307(b). The bankruptcy court signed and entered the dismissal, and the creditor moved to reconsider the order dismissing. The bankruptcy court vacated the dismissal order and ordered conversion. The debtor appealed, and the Appellate Panel reversed.

The Appellate Panel noted a split of authority as to whether the absolute right of a debtor to dismiss under section 1307(b) could be subject to the court's discretion to grant an interested party's competing motion to convert. The Appellate Panel acknowledged the reasoning of courts "that Congress could not have intended to allow the debtor to thwart a creditor's right to request conver-

sion for cause by an unfettered power to voluntarily dismiss the case when faced with a conversion motion," *Beatty*, 162 B.R. at 857 (citations omitted), but refused to follow this reasoning and did not look beyond the plain language of the statute.

The better reasoned view is that a court must dismiss the case upon the debtor's request for dismissal under section 1307(b) if that request is made prior to the effective time of an order converting the case to Chapter 7. This view comports with the plain language of section 1307(c) [sic] which states that the court "shall" dismiss the case upon the debtor's request as well as the purposes of Chapter 13 and the voluntary nature of relief under that Chapter.

*Beatty*, 162 B.R. at 857 (citing *inter alia In re Nash*, 765 F.2d 1410, 1413 (9th Cir.1985), for the proposition that a Chapter 13 debtor has an absolute right to dismiss).

Even though there were no allegations of fraud made against the debtor in *Beatty*, there is no indication that the Appellate Panel would have accepted a special exception in Chapter 13 cases where the creditor asserted fraud as the "cause" for conversion. In fact, the Appellate Panel expressly rejected the Eighth Circuit's Chapter 12 decision in *Graven*. *Beatty*, 162 B.R. at 857. This court assumes the Appellate Panel understood that by express rejection of *Graven*, it was rejecting any and all exceptions to the debtor's unqualified right to dismiss a case—even in instances of fraud.

■ Finally, just because a debtor may voluntarily dismiss a Chapter 12 case does

---

5. Like section 1208(b), section 1307(b) gives the debtor an absolute right to dismiss if the case has not been previously converted.

> On request of the debtor *at any time*, if the case has not been converted under section 706, 1112, or 1208 of this title, the court *shall* dismiss a case under this chapter. Any waiver of the right to dismiss under this subsection is unenforceable.

11 U.S.C. § 1307(b) (emphasis added).

Like section 1208(d), section 1307(c) provides the right of an interested party to move for dismissal or conversion of the case for "cause."

> Except as provided in subsection (e) of this section, on request of a party in interest or the

United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including—. . . .

11 U.S.C. § 1307(c).

The only practical difference between the Chapter 13 statutes at issue in *Beatty* and the Chapter 12 statutes at issue here is that a creditor in a Chapter 13 case may bring a motion to dismiss or convert "for cause," while a creditor in a Chapter 12 case may bring a motion to dismiss or convert only for debtor's "fraud in connection with the case."

not mean that interested parties and the court are without remedies to redress a debtor's fraudulent or abusive use of Chapter 12 bankruptcy proceedings. As discussed in further detail below, at least three independent sources of power and authority are available to sanction a debtor who exercises the absolute right to dismiss as a shield for fraudulent or abusive conduct. Where such fraudulent or abusive conduct may be redressed by appropriate sanction, the court is further convinced that a Chapter 12 debtor's right to dismiss as set forth in the plain and clear language of section 1208(b) should be interpreted as written—absolute and unqualified.

## II.

The court has on two prior occasions determined that Bank has shown a prima facie case of fraud that would be sufficient under the *Graven* line of cases to hold debtors' section 1208(b) motion to dismiss in abeyance in favor of first hearing Bank's section 1208(d) motion to convert. On Bank's present motion for reconsideration, Bank again has convinced the court that an evidentiary hearing on debtors' conduct during the case would likely show either fraudulent or clearly abusive conduct in connection with this case.[6] With this decision, however, the court has rejected the *Graven* line of cases in favor of determining debtors' right to dismiss under

section 1208(b) to be absolute. Notwithstanding this decision, based on Bank's preliminary showing, the court cannot tolerate debtors' alleged fraud and abuses to go unredressed. While the court cannot order conversion of debtors' case, the court does have the equitable power to fashion an appropriate sanction for fraud perpetrated against creditors and on the court.

Post-dismissal jurisdiction[7] to set an evidentiary hearing to determine sanctions is appropriate under at least one of three separate sources of authority. First, under section 105(a) of the Code,[8] the court has the power, sua sponte, to make any determination necessary to prevent an abuse of process. *See generally In re Hale*, 980 F.2d 1176, 1179 (8th Cir.1992). Second, the court has broad inherent power to sanction bad faith litigation practices such as fraud upon the court. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 41–42, 111 S.Ct. 2123, 2130–31, 115 L.Ed.2d 27 (1991) (affirming court's use of its inherent power to sanction "acts which degrade the judicial system," including "attempts to deprive the court of jurisdiction, fraud, misleading and lying to the Court") (quoting from *NASCO, Inc. v. Calcasieu Television & Radio, Inc.*, 124 F.R.D. 120, 139 (W.D.La.1989), *aff'd*, 894 F.2d 696 (1990)). Finally, the court has authority to impose sanctions under Bankruptcy Rule 9011[9] for

---

**6.** Bank has produced approximately 20 lbs. of declarations and exhibits evidencing debtors' alleged fraudulent conduct.

**7.** The court has jurisdiction over this matter since the evidentiary hearing will concern matters which occurred during debtors' Chapter 12 case. To determine otherwise would seriously undermine the court's authority to sanction fraudulent or abusive conduct. A party cannot perpetrate a fraud on other parties or the court and then expect the court to decline jurisdiction based on the offending party's voluntary dismissal of the subject proceedings. *See, e.g., In re Eighty South Lake, Inc.*, 81 B.R. 580 (9th Cir. BAP 1987) (holding that dismissal of case did not deprive bankruptcy court of jurisdiction to impose sanctions). Accordingly, the court retains jurisdiction over this matter.

**8.** Section 105(a) provides:
   The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an

issue by a party in interest shall be construed to preclude the court from, *sua sponte, taking any action or making any determination necessary or appropriate* to enforce or implement court orders or rules, or *to prevent an abuse of process.*
   11 U.S.C. § 105(a) (emphasis added).

**9.** Rule 9011 provides, in pertinent part, as follows:

   The signature of an attorney ... constitutes a certificate that ... it [the petition, pleading, motion or other paper served or filed under the Bankruptcy Code] is not interposed for any *improper purpose,* such as to harass or to cause unnecessary delay or needless increase in the cost of litigation or administration of the case.... If a document is signed in violation of this rule, *the court ... on motion or its own initiative,* shall impose on the person who signed it ... an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the

actions interposed for "improper purposes" which include abusive conduct prejudicial to other parties. *See, e.g., In re Grantham Bros.,* 922 F.2d 1438 (9th Cir.1991) (imposing 9011 sanctions for filing adversary complaint that harassed and intimidated parties, delayed bankruptcy proceedings, and increased cost of litigation); *Cohen v. Virginia Elec. & Power Co.,* 788 F.2d 247 (4th Cir.1986) (imposing Rule 11 sanctions for filing motion for leave to amend where the motion was used solely as tactic to determine whether opposing party would resist it); *In re Chase,* 147 B.R. 630 (Bankr.D.Mass.1992) (imposing Rule 9011 sanctions for filing pleading for withdrawal of motion for dismissal under 1208(b) that was not well-grounded in fact and that hindered creditor's efforts to collect its debt).

### Conclusion

Based on the foregoing, the court will deny Bank's motion for reconsideration, but will set an evidentiary hearing on Bank's allegations of fraud and the propriety and nature of sanctions to be imposed, if any.

document, including a reasonable attorney's fee.