**In re Olivia S. GREENBERG, Debtor.**

**Bankruptcy No. 95 B 40987 (SMB).**

United States Bankruptcy Court,
S.D. New York.

Sept. 4, 1996.

Olivia S. Greenberg, New York City, pro se.

Siller Wilk LLP (Ronald S. Itzler, of counsel), New York City, for 40 East 80th Apartment Corp.

Eschen, Eschen & Frenkel (Frank J. Culhane, of counsel), Syosset, New York, for Wendover Funding, Inc., as servicing agent for Home Savings of America.

Lana Halliday, New York City, for Debtor.

## MEMORANDUM DECISION GRANTING DEBTOR'S MOTION TO DISMISS CASE

STUART M. BERNSTEIN, Bankruptcy Judge.

40 East 80 Apartment Corp. (the "Co-op") moves to convert Olivia Greenberg's (the "debtor") Chapter 13 case to one under Chapter 7. Prior to the return date, the debtor "cross-moved" to dismiss her case pursuant to § 1307(b) of the Bankruptcy Code. The Co-op opposed the debtor's motion. For the reasons that follow, the Court will dismiss the case upon the conditions stated below, and deny the Co-op's motion to convert the case.

### FACTS

The factual background of this case is set forth in the Court's *Memorandum Decision Denying Debtor's Motion to Reinstate the Automatic Stay and Stay Pending Appeal* dated July 8, 1996 ("Mem. Dec."), familiarity with which is presumed. I will summarize only those facts relevant to the pending motions.

The debtor resides in Apartment 3A in a building located at 40 East 80th Street (the "Building"). The Co-op owns and operates the Building as a residential, cooperative multiple dwelling. The debtor, in turn, owns 1,515 shares in the Co-op and occupies Apartment 3A as assignee of a proprietary lease with the Co-op. She acquired her shares and lease on or about April 12, 1979, from Sidney N. Weniger, the sponsor of the conversion, for approximately $56,000.00. She financed her acquisition with a $50,-000.00 loan from The Bowery Savings Bank to whom she pledged the shares and lease as security for repayment. The Bowery subsequently assigned its interest to Home Savings Bank ("Home"). Today, the debtor's interest may be worth ten times the original purchase price.

Since 1992, the debtor and the Co-op have been engaged in numerous disputes whose enmity, at least from the debtor's standpoint, rivals the bloodiest civil war. The origins of the dispute remain murky to this day, but I have become convinced that they have as much to do with personalities as with economics. The debtor has also fought with her mortgagee, accusing it of various sins not quite rising to the level of the Co-op's supposed wrongdoing.

This is the debtor's second sojourn through bankruptcy. She filed her first chapter 13 case on March 17, 1994, apparently to forestall legal action against her by the Co-op. (*Application for an Order Converting Chapter 13 Case to One under Chapter 7* dated July 3, 1996, at ¶ 9.) On July 27, 1994, Judge Gallet, to whom the case was assigned, signed an order granting the debtor's motion to voluntarily withdraw her petition. (*Id.,* Ex. D.) Thereafter, in or about January, 1995, the Co-op served a Notice to Cure and Notice of Intention to Terminate Proprietary Lease and Cancel Shares of Stock, (*id.,* Ex. E), on the debtor, and commenced an action in state court to foreclose its security interest in the debtor's shares in the Co-op and her proprietary lease.

In response to the debtor's motion, the state court granted a stay of the foreclosure/eviction proceeding based upon the debtor's contention that she had paid her maintenance, although late, and that the amounts demanded by the Co-op were excessive and not due. (Transcript of hearing held May 23, 1996, at 19–20.) According to the debtor, her state court attorney quit on the eve of the state court hearing, she was not prepared to try the case *pro se,* and filed this chapter 13 case on March 9, 1995, to

obtain the benefit of the automatic stay. (*Id.* at 20.)

The debtor's current petition and her schedules contain numerous misstatements and omissions. She did not disclose the prior bankruptcy in the petition. She failed to disclose her ownership of certain artwork that came to light only when her former attorney, Larry Fine, Esq., sought leave to withdraw as her counsel in May, 1996. (Mem. Dec. at 22–23 n. 10.) In addition, her schedules revealed that she did not earn regular income and apparently relied upon contributions from unidentified sources to pay her monthly co-op maintenance. (*See Schedule I—Current Income of Individual Debtors* dated Mar. 9, 1995.) Her schedules did not indicate how she met her other expenses. Her plan, dated Mar. 30, 1995, proposed to pay only $320.00 per month, for sixty months, or a total of $19,200.00, which is inadequate to meet her priority and secured debt. Finally, she never sought a court order authorizing a five year repayment plan. *See* 11 U.S.C. § 1322(d).

As I explained at greater length in the Memorandum Decision, the debtor has continuously failed to pay her co-op maintenance in the correct amount or in a timely fashion even after I ordered her to do so. Consequently, I granted the Co-op's motion for relief from the automatic stay, essentially sending the parties back to state court to litigate their two party dispute.

At approximately the same time, the Co-op made the pending motion to convert the case, claiming that the debtor had engaged in dilatory and abusive practices before me, and her conduct mandated conversion to chapter 7 and the appointment of an independent trustee. The Co-op's real concern is that the state court litigation will take more than six months to resolve. The debtor, it fears, will

wait six months,[1] file another case and invoke the automatic stay to again frustrate the Co-op's efforts to collect its secured claim.

Prior to the return date, the debtor made a "defensive" cross-motion to dismiss her case.[2] She preferred to remain in chapter 13, but if she could not, she would then prefer to be out of bankruptcy rather than in chapter 7. On the July 25, 1996 return date, she reiterated this position in open court. (Transcript of hearing held July 25, 1996 ("Tr. 7/25/96"), at 25–26.) Responding to the Co-op's concerns that she would file another case in six months, she agreed that if she filed another case within one year of a dismissal, the automatic stay would not apply in the new case to the Co-op or Home. (*Id.* at 48.)

The debtor subsequently reneged on her offer. On or about August 2, 1996, she submitted an unsolicited, proposed order granting her motion to dismiss her case without prejudice pursuant to 11 U.S.C. § 1307(b).[3] The proposed order made the automatic stay inapplicable to any case filed in the next 180 days although under 11 U.S.C. § 109(g)(2), she could not even file another case within 180 days. Hence, her proposed order not only withdrew her concession but impliedly granted rights that Congress had withheld.

## DISCUSSION

Section 1307(b) of the Bankruptcy Code states that "[o]n request of the debtor at any time … the court *shall* dismiss a case under this chapter." 11 U.S.C. § 1307(b) (emphasis added). The plain language of the statute suggests that "[s]ection 1307(b) is mandatory and the court has no choice but to dismiss a Chapter 13 proceeding on the debtor's motion." *In re Turiace*, 41 B.R. 466, 466 (Bankr.D.Or.1984); *accord In re Hearn*, 18 B.R. 605, 606 (Bankr.D.Neb.1982) (citing legislative history for the propositions that "the

---

1. Pursuant to 11 U.S.C. § 109(g)(2), if I grant the debtor's motion to voluntarily dismiss her case, she cannot file another case for 180 days.

2. The debtor also objected to the service of the Co-op's motion, "rewriting" Fed.R.Bankr.P. 4001, and claiming that she was never served. However, the Co-op's affidavit of service indicated that both the debtor and her new (now former) attorney, Lana Halliday, Esq., were served with the motion. In addition, Ms. Halliday (who

never challenged the service) stated that she had been served (Transcript of hearing held July 25, 1996, at 15), and the debtor eventually conceded that the motion must have been served upon her too. (*Id.* at 16.)

3. I had reserved decision following the July 25, 1996 hearing, and the matter remained *sub judice* until now.

court is required to honor the debtor's request for dismissal" and "1307(b) confirm[s] without qualification the right of a Chapter 13 debtor to dismiss his own case"); 5 Lawrence P. King, *et al. Collier on Bankruptcy* ¶ 1307.01[3][a], at 1307–6 (15th ed. 1996) ("[T]he debtor is entitled, as a matter of right, to obtain a dismissal of the chapter 13 case, at any time."). The rationale is that chapter 13 is completely voluntary, and on both constitutional and policy grounds, no one should be compelled to work for her creditors. H.R.Rep. No. 595, 95th Cong., 1st Sess. 120 (1977) U.S.Code Cong. & Admin.News 1978, pp. 5787, 6080–81; *see In re Tornheim*, 181 B.R. 161, 169 n. 7 (Bankr. S.D.N.Y.1995), *appeal dismissed*, No. 95 Civ. 8474, 1996 WL 79333 (S.D.N.Y., Feb. 23, 1996).

While many courts recognize a chapter 13 debtor's absolute right to dismiss her case under any circumstances, others have held that the court, faced with the debtor's motion to dismiss, may nevertheless convert the case where evidence of the debtor's improper conduct or fraud exists. *See In re Harper–Elder*, 184 B.R. 403, 404–05 (Bankr.D.D.C. 1995) (collecting cases); *In re Howard*, 179 B.R. 7, 9–10 (Bankr.D.N.H.1995) (same); *In re Rebeor*, 89 B.R. 314, 322 (Bankr.N.D.N.Y. 1988) (same). Those that follow the absolute approach rely on the mandatory language of section 1307(b). *See, e.g., In re Gillion*, 36 B.R. 901, 906 (E.D.Ark.1983) (comparing mandatory language in 11 U.S.C. § 1307(b) with the permissive language in section 1307(c)[4]); *In re Eddis*, 37 B.R. 217, 218 (E.D.Pa.1984); *In re Harper–Elder*, 184 B.R. at 405; *In re Howard*, 179 B.R. at 9; *In re Rebeor*, 89 B.R. at 322; *In re Hearn*, 18 B.R. at 606–07; *cf. In re Davenport*, 175 B.R. 355, 358 (Bankr.E.D.Cal.1994) (construing 11 U.S.C. § 1208(b)). The contrary view avoids the apparent command of section 1307(b), interpreting section 1307(c)—and the debt-

or's bad faith—as an implicit limitation on the absolute right to dismiss so as to prevent the debtor from improperly manipulating the bankruptcy process. *See, e.g., Molitor v. Eidson (In re Molitor)*, 76 F.3d 218, 220 (8th Cir.1996); *In re McCraney*, 172 B.R. 868, 869 (N.D.Ohio 1993); *Gaudet v. Kirshenbaum Inv. Co. (In re Gaudet)*, 132 B.R. 670, 675–76 (D.R.I.1991); *In re Howard*, 179 B.R. at 9; *In re Vieweg*, 80 B.R. 838, 841 (Bankr. E.D.Mich.1987); *In re Zarowitz*, 36 B.R. 906, 908 (Bankr.S.D.N.Y.1984) (*dicta*); *cf. In re Jacobs*, 43 B.R. 971, 975–76 (Bankr.E.D.N.Y. 1984) (once court commences inquiry into debtor's bad faith and improper purpose, the court need not grant debtor's motion for voluntary dismissal, and instead, may dismiss the petition for cause and impose sanctions).

Nevertheless, even those courts that hold the right to dismiss to be absolute recognize their authority to attach strings to the dismissal. Section 1307(b) is not self-executing; the debtor must make a formal motion, serve it in accordance with Fed. R.Bankr.P. 1017(d)[5], and the court must enter a dismissal order. *In re Merritt*, 39 B.R. 462, 464–65 (Bankr.E.D.Pa.1984). The dismissal order may impose sanctions and conditions if the circumstances indicate fraud, bad faith or abusive tactics. *In re Whitten*, 11 B.R. 333, 340 (Bankr.D.D.C.1981) (debtor's absolute right to dismiss cannot be construed "in derogation of the Court's inherent power to prevent the abuse and misuse of the judicial process where pleadings are filed in bad faith"). Further, unlike the granting of a competing conversion motion under 11 U.S.C. § 1307(c), a dismissal with conditions does not contravene the debtor's absolute right to dismiss her case under section 1307(b). *In re Merritt*, 39 B.R. at 465.

The latter group of cases have identified three sources of the power to impose sanctions and conditions in the face of

---

4. Section 1307(c) provides, in pertinent part:

   [O]n request of a party in interest or the United States trustee and after notice and a hearing, the court *may* convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause.... (Emphasis added.)

5. Rule 1017(d) states in pertinent part:

   Conversion or dismissal pursuant to §§ 706(a), 1112(a), 1208(b), or 1307(b) shall be on motion filed and served as required by Rule 9013. A chapter 12 or chapter 13 case shall be converted without court order on the filing by the debtor of a notice of conversion pursuant to §§ 1208(a) or 1307(a)....

the debtor's absolute right to dismiss. First, 11 U.S.C. § 349(a)[6] permits the court to impose conditions upon the dismissal order where cause exists. *See, e.g., In re Harper–Elder*, 184 B.R. at 406–07; *In re Dilley*, 125 B.R. 189, 195 (Bankr.N.D.Ohio 1991); *In re Merritt*, 39 B.R. at 465. Second, section 105(a) authorizes the court to impose appropriate restraints to protect its jurisdiction and authority from those who willfully evade court orders. *In re Dilley*, 125 B.R. at 197; *cf. In re Davenport*, 175 B.R. at 361 (discussing mandatory dismissal under the analogous provisions of chapter 12). Third, the court may sanction the debtor for bad faith under Fed.R.Bankr.P. 9011 and its inherent powers. *In re Harper–Elder*, 184 B.R. at 406–07; *cf. In re Davenport*, 175 B.R. at 361–62 (discussing mandatory dismissal under the analogous provisions of chapter 12).

■ I agree, as do most of the reported cases, that the debtor has an absolute right to dismiss her chapter 13 case, but that the court can impose conditions and sanctions in the dismissal order. The statute—section 1307(b)—is too clear to read other than as an absolute command. All agree that a debtor cannot be forced to remain in chapter 13, and the pendency of a conversion motion or a bad faith inquiry, in the absence of a conversion motion, does not change the language. If Congress intended to limit the absolute right to dismiss in such cases, it knew how to express this limitation; section 1307(b) denies the debtor an absolute right to dismiss if the case was previously converted under sections 706, 1112 or 1208. This does not mean that the debtor can use the commencement and voluntary withdrawal of her chapter 13 case as a tactic to harass and frustrate her legitimate creditors. Hence, the voluntary dismissal is not the safety valve that it may appear to be, and the court can impose conditions to protect against further abuse.

■ The remaining questions, therefore, are whether cause exists to impose sanctions or conditions on the dismissal, and if so, what they should be. Discussing "cause" and "bad faith" in a different context, this court has noted:

Bad faith has both an objective and subjective element; the proponent of bad faith must show "both objective evidence of a fundamentally unfair result and subjective evidence that a debtor filed a petition for a fundamentally unfair purpose that was not in line with the spirit of the Bankruptcy Code." *In re Love*, 957 F.2d [1350] at 1357 [ (7th Cir.1992) ].... Serial filings are evidence of bad faith, ... as are petitions filed to forestall creditors, often replete with false and misleading information, that offer no legitimate prospect of reorganization.

*In re Eatman*, 182 B.R. 386, 392 (Bankr. S.D.N.Y.1995) (internal citations omitted); *accord In re Spectee Group, Inc.*, 185 B.R. 146, 155 (Bankr.S.D.N.Y.1995) ("Bad faith exists where the debtor lacks any realistic possibility of reorganization, and files the petition for the sole purpose of frustrating and delaying its secured creditor's efforts to enforce its legitimate rights."). Similarly, cause exists under section 349(a) to impose conditions on the dismissal "where ... the debtor without justification has failed for fourteen months to propose a feasible plan, has failed to comply with court orders and has flouted the court's authority." *In re Dilley*, 125 B.R. at 195.

■ The debtor concedes that she filed this second chapter 13 case (as she apparently filed her previous chapter 13 case) to prevent the Co-op from pursuing state court litigation. She thereby managed to delay that litigation sixteen months.[7] Yet, the debtor does not even seem to be eligible for chapter 13 relief as only an individual with regular income can file a chapter 13 petition. 11 U.S.C. § 109(e). The debtor's

---

6. Section 349(a) provides as follows:

   *Unless the court, for cause, orders otherwise,* the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title. (Emphasis added.)

7. In July 1996, I denied the debtor's motion to reinstate the stay, clearing the way for the continuation of the state court proceeding.

Statement of Financial Affairs, sworn to Mar. 9, 1995, indicates annual income in 1992, 1993 and 1994 of $30,000.00, $30,000.00 and $7,000.00, respectively. At the time she filed the case in 1995, however, she did not have regular income. And although her schedules indicate that she holds a support or alimony award, they also show that her former husband has wholly failed to meet his obligation. Moreover, without regular income, there is no objective hope of successfully confirming and consummating even the inadequate plan that she filed.[8]

In addition, and as already noted, her schedules and the petition are replete with misstatements and omissions. Of particular concern, she failed to disclose artwork that she owned and later sought to convey to Mr. Fine without telling the court. Each page of her schedules and her Statement of Financial Affairs contains a disclaimer that "Debtor reserves the right to amend this schedule, if necessary," but this hardly rescues her. This implies that there may be assets of which she was not then aware, but she has never claimed that she did not know about the omitted assets when she prepared the schedules. Yet she never amended the schedules to include them, even when she filed an amended petition on or about April 10, 1995.

The debtor's postpetition conduct, discussed at length in the Memorandum Decision, served no purpose but to harass the Co-op and increase legal fees. I stated at that time, and repeat here my reasons for refusing to reimpose the automatic stay as those reasons are equally apt to the issue now before me:

> Despite the debtor's continued refusal to pay maintenance, I did not immediately grant relief from the automatic stay. Instead, I followed the common practice in chapter 13 cases, and issued conditional orders on two occasions, giving the debtor the chance to cure her defaults. The debt-

or, however, ignored the conditional orders, and seems incapable of accepting that she must pay her maintenance to the Co-op on a going forward basis until her objections are resolved. She refused to pay maintenance at the beginning of the case. After the first conditional order of June 15, 1995, she refused to pay any increases or assessments. After the second conditional order of April 9, 1996, she refused to comply with the direction that she pay $1,691.96, and instead, attempted to relitigate that determination through the submission of proposed counter-orders. Although she now says she was always willing to pay the full amount on April 30, I find this disingenuous.

> Having failed to pay in accordance with the conditional orders, the debtor now seeks to reimpose the automatic stay. I decline, however, to grant the debtor one more bite of an apple she has already chewed to the core. The debtor has consistently failed to comply with court orders and contractual obligations, and her tactics have multiplied these proceedings and increased the litigation costs.

(Mem. Dec. at 19–21) (footnote omitted.)

The debtor, during the last two months, has again failed to pay any maintenance. Hence, she continues to be in violation of prior court orders as well as her obligations under the proprietary lease which she has consistently attempted to disavow and ignore. The debtor has never said she lacks the financial ability to obey the court orders or pay the postpetition charges; she just simply refuses to pay.

Consequently, cause exists under section 349(a) to impose conditions and sanctions on the dismissal.[9] These should fit the situation, remedying the abuse and protecting the party most directly affected by the wrongful conduct. I have previously determined, in connection with the Co-op's relief from stay motion, that this dispute belongs in state

---

8. In addition to the priority tax claims aggregating $10,500.00, which her schedules disclosed, the debtor owed a secured claim to the Co-op of at least $25,000.00 when she filed her petition. (Mem. Dec. at 12–15.) The debtor has continually refused to recognize her obligation to the Co-

op, but I have previously ruled that her opposition lacked merit. (*Id.* at 16–19).

9. In light of this conclusion, I need not consider the other bases for imposing conditions and sanctions.

court. Hence, absent some change in circumstances, a subsequent filing should not affect that determination. Moreover, where a debtor abuses the bankruptcy process by filing a petition to obtain the benefit of the automatic stay, the court may dismiss the case and limit the effect of the automatic stay in any future case, subject to the debtor's (or trustee's) right to seek to reimpose the stay upon appropriate notice. *E.g., Ulster Sav. Bank v. Kizelnik (In re Kizelnik)*, 190 B.R. 171, 184 (Bankr.S.D.N.Y.1995).

Accordingly, I will grant the debtor's motion to dismiss, but pursuant to 11 U.S.C. § 349(a), the dismissal order shall provide that if the debtor files another bankruptcy case, the automatic stay will not apply to the current litigation between the debtor and the Co-op, or to the Co-op's right to foreclose its security interest, or evict the debtor, if the state court permits it to do so. The debtor or her trustee may seek to reimpose the stay upon appropriate notice to the Co-op; this will effectively shift the burden from the Co-op to the debtor, and prevent, in the future, the unfairness and abuse that has occurred to date. In light of this disposition, the Co-op's motion to convert the case to chapter 7 is denied.

SETTLE ORDER ON NOTICE.