In re Eugena SPEAR, Debtor.

Bankruptcy No. 96–44233–HJB.

United States Bankruptcy Court,
D. Massachusetts.

Dec. 13, 1996.

Jerome J. Scully, Lee, MA, for Jeffrey Cernik.

John R. Gobel, Pittsfield, MA, for Rolling Hills Condominium Trust.

Denise M. Pappalardo, Chapter 13 Trustee, Worcester, MA.

## MEMORANDUM OF DECISION

HENRY J. BOROFF, Bankruptcy Judge.

Before the Court for determination is a "Motion to Reconsider a Decision" (the "Reconsideration Motion"), a "Motion to Stay the Execution of a Lien Pending Appeal" with respect to a certain lien held by Jeffrey Cernick, and a "Motion to Stay the Execution of a Lien Pending Appeal" with respect to a certain lien held by Rolling Hills Condominium Trust (the "Trust") (collectively the "Stay Motions") filed by Eugena Spear (the "Debtor"). The Motions relate to orders of this Court, dated November 13, 1996. Scheduled for hearing on that date was (i) a

1. The Court has treated the "Request" as a motion.

2. At the November 13, 1996 hearing, there were conflicting allegations as to whether the Debtor actually resides in the condominium unit.

"Request for Dismissal with Prejudice" filed by Rolling Hills Condominium Trust (the "Trust Motion")[1]; (ii) this Court's order that the Debtor show cause why the case "should not be converted to a petition[sic] under Chapter 7, or dismissed pursuant to 11 U.S.C. § 109(g) and 11 U.S.C. § 105, and why the Debtor should not be barred from filing further cases in the District of Massachusetts" (the "Show Cause Order"); and (iii) a "Motion for Dismissal" filed by the Debtor. At the hearing on said date, this Court allowed the Trust Motion and ordered that "[the Debtor [was] barred from filing any further case in this District on or before May 13, 1997.]" The Debtor now seeks reconsideration of the foregoing orders as well as a stay of the execution of certain liens held by Jeffrey Cernick and the Trust against the condominium unit which she owns.[2]

### I. Facts

The facts relevant to the disposition of this matter are those in the Court's docket or as set forth in open court. These facts are not disputed.

On May 28, 1996, the Debtor filed a petition in this District under Chapter 13 of the Bankruptcy Code (Case No. 96–42842). Because the petition was filed without Schedules A through J, the Statement of Financial Affairs, or the Chapter 13 Plan, the Court ordered that the missing documents be filed no later than June 12, 1996.[3] However, on June 7, 1996, the Debtor filed a motion to dismiss the case. There being no reason not to give effect to the Debtor's right to dismiss the Chapter 13 case, pursuant to 11 U.S.C. § 1307(b), the Court allowed the motion on June 10, 1996, and the case was administratively closed on June 26, 1996.

On July 1, 1996, the Debtor filed a second petition in this District under Chapter 13 of the Bankruptcy Code (Case No. 96–43543). Again the petition was filed without Schedules A through J, the Statement of Financial

3. The Debtor also filed an application to pay the filing fee in installments, and paid $40 at the time of the filing. The next three installments of $40 each were due monthly, commencing June 27, 1996.

Affairs, or the Chapter 13 Plan. The Court, therefore, again ordered that the missing documents be filed, this time no later than July 16, 1996.[4] However, on July 15, 1996, the Debtor again filed a motion to dismiss the case. Accordingly, on July 16, 1996, the Court dismissed the case. The case was then administratively closed on July 29, 1996.

However, the Debtor was not finished. On August 2, 1996, the Debtor filed a third (and the instant) petition in this Court under Chapter 13 of the Bankruptcy Code. Once again the petition was filed without Schedules A through J, the Statement of Financial Affairs, or the Chapter 13 Plan. The Court, therefore, again ordered that the missing documents be filed, this time no later than August 19, 1996.[5] However, this time the Court discerned the Debtor's pattern. As a result, on August 6, 1996, the Court issued the Show Cause Order to be heard on August 28, 1996. Not inconsistently, the Debtor filed her own motion to dismiss the case on August 12, 1996.[6] The Debtor's motion was scheduled for hearing on August 28, 1996, simultaneous to the hearing on the Court's Show Cause Order.

On August 26, 1996, the Debtor requested a continuance of the August 28, 1996 hearings on the grounds that she was temporarily residing in Worcester, Massachusetts and was unable to arrange for transportation to Springfield, Massachusetts for the hearings. The continuance was allowed and the Court rescheduled the hearing for September 3, 1996 in Worcester. On August 29, 1996, the Debtor filed another request for a continuance· on the grounds that she needed an additional 30 days to enable her to retain counsel. The Court allowed the request and continued the hearings to September 17, 1996, but with the caveat that no further continuances would be granted.

At the hearing on September 17, 1996, the Debtor appeared, together with counsel for Jeffrey Cernick and the Trust. In response to this Court's questions, the Debtor conceded that she had intentionally filed each of the three petitions to stay a pending foreclosure and with the intention to dismiss the cases when necessary. Her rationale was that she was unable to prosecute the cases on her own. She perceived her inability to retain counsel, in comparison with the retention of counsel by her adversaries, to be an "obstruction of justice." She, therefore, asked the Court to appoint counsel to represent her. In response, the Court informed the Debtor that it had no statutory authority under the Bankruptcy Code to appoint counsel for a debtor. The Court warned that the Debtor would have to either prosecute the case pro se or retain counsel. Failing either, the Court would bar a further refiling for some period of time. The Court then continued the hearings for approximately six (6) weeks to October 30, 1996, in order to afford the Debtor what the Court believed was a substantial period of time to locate counsel. On October 17, 1996, the Trust filed its "Request for Dismissal with Prejudice." That motion was also scheduled for hearing on October 30, 1996.

On October 29, 1996, the Debtor moved to continue the hearings for an additional eight (8) weeks so that she could continue her efforts to retain counsel and also to allow her to recover from an alleged intervening physical assault upon her. Again the Court allowed a continuance and rescheduled the hearings to November 13, 1996, and again stated that no further continuances would be granted. As expected, on November 8, 1996 the Debtor filed an "Emergency Motion to Permit Attendance in Another Court and Rescheduling of Hearing Date." The new motion alleged that a conflicting hearing had been scheduled on the same day with respect

---

4. The Debtor again filed an application to pay the filing fee in installments, and this time paid $5 at the time of the filing. The next three installments of $51, $51, and $53, respectively, were due monthly, commencing July 31, 1996.

5. The Debtor again filed an application to pay the filing fee in installments, and again paid $5 at the time of the filing. The next three install-

ments of $51, $51, and $53, respectively, were due monthly, commencing September 3, 1996.

6. On August 23, 1996, Jeffrey Cernick filed an "Assent to Debtor's Motion to Dismiss and Motion that Said Dismissal Be with Prejudice." Inadvertently, this motion was never scheduled for hearing and thus was rendered moot by the Court's order dismissing the case.

to a case filed by the Commonwealth of Massachusetts against the individual who had assaulted her. The motion failed to state at what time of day the Commonwealth's matter was scheduled in the state court. Further, the motion warned that on the following Wednesday (when this Court might have rescheduled the hearings), another conflicting state court matter might be scheduled. The Court denied the request for a continuance.

At the hearing on November 13, 1996, the Debtor presented to the Court various documents which, on their face, suggested that the Debtor was at some time, in some place, and at someone's behest, physically harmed. The Debtor orally argued, albeit incomprehensibly, that the perpetrator of the harm was somehow connected to the lien creditors. It was unclear to the Court then, and it remains unclear now, who the perpetrator was or how his actions related to the claims of creditors in this case.[7] Nevertheless, more germane was a repeat of the September 17, 1996 exchange between the Debtor and the Court relative to the prosecution of the case. The Debtor again asked the Court to appoint counsel on her behalf, claiming that the Court's failure to do so was an "obstruction of justice." The Court responded again that it had no authority to appoint counsel to represent a debtor. The Court inquired as to whether the Debtor was prepared to prosecute the case pro se. The Debtor reported that she could not. Without a viable alternative, the Court dismissed the case and barred the plaintiff from filing a case in the District of Massachusetts prior to May 13, 1997. What followed was the Reconsideration and Stay Motions. They contain nothing new. Nevertheless, the Debtor has remained consistent. She does not object to the dismissal of this case. She only objects to the dismissal being ordered "with prejudice."

## II. *Discussion*

▪ Section 1307(c) provides a nonexhaustive list of grounds upon which a bankruptcy court may dismiss a chapter 13 case. Although the Trust Motion did not plead specific grounds for dismissal under § 1307(c), there are several provisions which are applicable in this case.

First, § 1307(c)(1) provides that a chapter 13 case may be dismissed for "unreasonable delay by the debtor that is prejudicial to creditors." The Debtor conceded that all three of the petitions were filed to stay a pending foreclosure. The Debtor's continued filings and dismissals, as well as her repeated requests for continuances have delayed her creditors for almost seven (7) months. At the same time, the Debtor has never filed schedules or a plan, and has paid only minimal filing fees. Such conduct has hindered and delayed creditors with no hope of resolution on the horizon. There is no doubt that creditors have suffered undue prejudice. Furthermore, in view of the fact that the Debtor told the Court that she was unable to prosecute the case without the assistance of an attorney and could not or would not retain one, the Court could find no reason to allow the case to continue or for creditors to endure further delay.

▪ Second, although filing a chapter 13 petition in bad faith is not among the grounds itemized in § 1307(c), it nonetheless constitutes cause for dismissal. *In re Lilley*, 91 F.3d 491 (3d Cir.1996); *Eisen v. Curry (In re Eisen)*, 14 F.3d 469 (9th Cir.1993); *Gier v. Farmers State Bank (In re Gier)*, 986 F.2d 1326 (10th Cir.1993); *In re Love*, 957 F.2d 1350 (7th Cir.1992); *In re Jones*, 174 B.R. 8 (Bankr.D.N.H.1994); *Anderson v. Anderson (In re Anderson)*, 1992 WL 170682 (D.Mass1992) (affirming Judge Goodman's dismissal of chapter 13 case as bad faith filing). Bad faith exists either when a debtor files a petition without intending to perform his or her statutory obligations under the Bankruptcy Code, or when a debtor's conduct before or during a case constitutes an abuse of the provisions, purpose, or spirit of

---

**7.** This Court is not without sympathy for the Debtor's personal difficulties. It appears that she did suffer physical injury. However, the remedy for that harm lies in the state court where, according to the Debtor, the Commonwealth of Massachusetts has already acted. This is a bankruptcy court, and its jurisdiction is limited to matters arising under or related to cases under the Bankruptcy Code. 28 U.S.C. § 1334(b).

the chapter under which relief is sought. *In re Merrill,* 192 B.R. 245, 248 (Bankr.D.Colo. 1995). While a debtor's history of filings and dismissals is not bad faith, per se, it may be evidence of bad faith. *Jones,* 174 B.R. at 14.

The Reconsideration Motion recites that "the prejudice with dismissal is the matter [the Debtor] asks to be reconsidered." The Court interprets this to mean that the Debtor is seeking reconsideration only of the provision barring the debtor from refiling a petition in this District for 180 days, not the dismissal itself. The Court finds that the repeated filings and dismissals, combined with the Debtor's apparent intention to continue ineffectual filings in order to stay foreclosure constitutes bad faith warranting dismissal.

What remains is the effect of the Court's dismissal on the Debtor's future actions in this Court.

### A. Application of 11 U.S.C. § 109(g)

■ Section 109(g) provides:

Notwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—

(1) the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case; or

(2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title.

The facts in this case present an example of a debtor's willful failure to prosecute a Chapter 13 case.[8] Therefore, it is clear that the Debtor could not have qualified as a debtor for the 180 days from November 13, 1996 until May 13, 1997. But this Debtor did not care whether she was qualified or not. This Debtor was interested only in the automatic stay. The appropriate remedy was not the dismissal that the Debtor herself re-

quested. The only appropriate remedy was to disqualify the Debtor from refiling a case for the 180–day period.

### B. Application of 11 U.S.C. § 349(a)

■ Section 349(a) provides:

Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title.

Courts are divided over whether the introductory language of § 349(a)—"Unless the court, for cause, orders otherwise"—applies only to the court's power to bar a debtor's discharge in subsequent cases, or whether it applies to the entire section including a dismissal with prejudice. The dispute apparently centers on the semicolon which separates the first clause regarding a bar of the debtor's discharge from the second clause regarding subsequent filings. In *Frieouf v. United States (In re Frieouf),* the Tenth Circuit concluded that the introductory language applies only to the clause preceding the semicolon and thus did not allow the court to limit the filing of subsequent petitions unless the terms of § 109(g) were satisfied. 938 F.2d 1099, 1103 (1991), *cert. denied,* 502 U.S. 1091, 112 S.Ct. 1161, 117 L.Ed.2d 408 (1992). However, the Fourth Circuit affirmed the reasoning of a Virginia district court decision which held that the introductory language applied to both clauses. *Jolly v. Great Western Bank,* 45 F.3d 426 (table), 1994 WL 717626 (1994) (unpublished). The Virginia District Court concluded that § 349(a) allows a court to prohibit the filing of subsequent petitions in two circumstances: (1) if the court, for cause, so orders, or (2) if the terms of § 109(g) apply to the debtor's case. *Jolly v. Great Western Bank (In re Jolly),* 143 B.R. 383, 387 (E.D.Va. 1992).

---

8. Although one could argue at length about different levels of willfulness, this Court would judi-

cially note that each year thousands of Chapter 13 debtors successfully prosecute cases, pro se.

Most bankruptcy courts refuse to follow the *Frieouf* rationale. Instead the majority of courts have held that § 349(a) permits the dismissal of a case with prejudice to the refiling of a subsequent petition where the court finds "cause." *E.g., In re Greenberg,* 200 B.R. 763, 768 (Bankr.S.D.N.Y.1996); *In re Belden,* 144 B.R. 1010, 1022 (Bankr. D.Minn.1992); *In re Dilley,* 125 B.R. 189, 197 (Bankr.N.D.Ohio 1991).

Without getting into the intricacies of proper grammatical structure and punctuation, the Court agrees with the majority of cases which hold that the language "unless the court, for cause, orders otherwise," allows the court to bar subsequent filings for cause. Therefore, even if the actions of the Debtor did not constitute the "willful failure" to prosecute the case, this Court maintains sufficient authority to bar a refiling for at least a limited period of time under the terms of § 349(a).

### C. Application of 11 U.S.C. § 105(a)

■ The bankruptcy court's authority to dismiss a case with prejudice also arises under § 105(a). *E.g., Greenberg,* 200 B.R. at 768; *In re Robinson,* 198 B.R. 1017, 1022 (Bankr.N.D.Ga.1996); *In re King,* 126 B.R. 777, 781 (Bankr.N.D.Ill.1991); *Dilley,* 125 B.R. at 197. *But see Merrill,* 192 B.R. at 253 (§ 105 does not empower court to prohibit debtors from filing subsequent bankruptcy cases). Section 105(a) provides that:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [title 11]. No provision of [title 11] providing for the raising of any issue by a party in interest shall be construed to preclude the court from, sua sponte, *taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules or to prevent an abuse of process* (emphasis added).

The Debtor's actions in filing Chapter 13 cases without hope of successful prosecution in order to obtain the benefit of the automatic stay, well meaning or not, desperate or not, is an abuse of the bankruptcy process. This Court is empowered by § 105(a) to pro-

tect that process and prevent harm to creditors.

### D. Application of 11 U.S.C. § 1307(b)

■ Finally, the Court notes that the dismissal of this case with prejudice does not impair the Debtor's right of dismissal pursuant to § 1307(b). Although § 1307(b) appears to give a debtor the right to dismiss a chapter 13 case at any time, the court maintains authority to condition dismissal or even to convert a case to Chapter 7 when appropriate. *E.g., Gaudet v. Kirshenbaum Inv. Co., Inc. (In re Gaudet),* 132 B.R. 670, 676 (D.R.I.1991); *Greenberg,* 200 B.R. at 767; *Dilley,* 125 B.R. at 195; *see Molitor v. Eidson (In re Molitor),* 76 F.3d 218, 220 (8th Cir.1996) (right to dismiss does not prohibit conversion by court under § 1307(c)); *cf. In re Harper-Elder,* 184 B.R. 403, 407 (Bankr. D.D.C.1995) (court has power to condition dismissal, but court may not convert case where debtor has moved to dismiss under § 1307(b)). Even a dismissal order on the debtor's own motion may impose sanctions and conditions if the circumstances indicate fraud, bad faith, or abusive tactics. *Greenberg,* 200 B.R. at 767 (quoting *In re Whitten,* 11 B.R. 333, 340 (Bankr.D.D.C.1981)) (debtor's absolute right to dismiss cannot be construed "in derogation of the Court's inherent power to prevent the abuse and misuse of the judicial process where pleadings are filed in bad faith").

There was no reason here to convert the case to Chapter 7. That would have frustrated the Debtor's intent in filing the Chapter 13 case. However, attaching to the dismissal a bar to refiling for a limited period will ensure that the Debtor's creditors are not similarly frustrated. A debtor's right to dismissal under § 1307(b) does not mean that the Debtor can use the commencement and voluntary withdrawal of her chapter 13 case as a tactic to harass and frustrate her creditors. *Greenberg,* 200 B.R. at 768.

### III. *Conclusion*

The Reconsideration Motion must be denied. The orders of this Court sought to be reconsidered were appropriately issued, and the Reconsideration Motion offers no newly

discovered evidence or a manifest error of fact or law. *See In re Wedgestone Financial,* 142 B.R. 7, 8 (Bankr.D.Mass.1992).

Similarly, the Stay Motions must be denied. There is no reason for this Court to stay the foreclosure of the liens of Cernick or the Trust if the underlying bankruptcy case is not viable. Finally, even were an appeal filed, it would, in this Court's view, be frivolous. Therefore, a necessary element of the test for the issuance of a stay pending appeal could not be met. *See In re Miraj and Sons, Inc.,* 201 B.R. 23, 26 (Bankr.D.Mass.1996).