### In re PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE, Debtor.

**Bankruptcy No. 88–00043.**

United States Bankruptcy Court, D. New Hampshire.

June 19, 1990.

Richard B. Levin, Catherine E. Shively, for Public Service Co.

Geoffrey B. Kalmus, J. Michael Deasy, for Unsecured Creditors Committee.

Howard J. Berman, for Equity Committee.

Mark W. Vaughn, for State of N.H.

John B. Nolan, for Northeast Utilities.

Bradford Paul Anderson, for New England Power Service.

Barbara Gould Overend, for Citicorp and CUC.

## MEMORANDUM OPINION AND ORDER ON MOTION FOR STAY PENDING APPEAL

JAMES E. YACOS, Bankruptcy Judge.

On April 20, 1990 the Court entered its "Order Confirming Third Amended Joint Plan of Reorganization" in this case. 114 B.R. 813. That order was timely appealed, and appellants filed a motion for stay of the order pending appeal. The Court heard all parties present on June 8, 1990 concerning this motion and ruled from the bench that the motion would be denied. That bench ruling is now embodied in the present written order.

Bankruptcy Rule 8005 governs the issuance of stays for appeals from a bankruptcy court. That Rule provides in part:

A motion for a stay of the judgment, order, or decree of a bankruptcy judge, for approval of a supersedeas bond, or for other relief pending appeal must ordinarily be presented to the bankruptcy judge in the first instance.

There has been only one reported case citing Rule 8005 involving a motion for stay pending a confirmation order. In *In re Dakota Rail, Inc.*, 111 B.R. 818 (Bankr. D.Minn.1990), the court denied the motion. For many of the same reasons for Judge Dreher's ruling, this Court likewise denied the movant's motion given the facts of this case.

■ The standards for obtaining a stay are no different in the First Circuit than elsewhere. The movant generally must make the same showing as that for obtaining preliminary injunctive relief, 9 *Collier on Bankruptcy*, § 8005.06, pp. 8005–9 (1988), which includes:

1. the likelihood of success on the merits on appeal;

2. irreparable harm to movant if relief is not granted;

3. this harm is greater than the injury the appellee will suffer if the stay is granted; and

4. the stay would not harm the public interest.[1]

See, e.g., *In re Great Barrington Fair and Amusement, Inc.*, 53 B.R. 237 (Bankr. D.Mass.1985); *In re Roth American, Inc.*, 90 B.R. 94, 95 (Bankr. M.D. Pa.1988); *In re The Charter Co.*, 72 B.R. 70, 71–72 (Bankr. M.D.Fla.1987); *In re Porter*, 54 B.R. 81 (Bankr. N.D.Okla.1985); *In re Barrup*, 53 B.R. 215 (Bankr.D.Vt.1985); *Matter of Baldwin United Corp.*, 45 B.R. 385 (Bankr. S.D. Ohio 1984); *In re Howley*, 38 B.R. 314 (Bankr. D.Minn.1984).

There is a difference of opinion among courts whether the movant must establish all four factors, see, e.g., *In re VVF Communications Corp.*, 41 B.R. 546, 550 (Bankr. D.C.1984), or whether the four factors must be balanced, see, e.g., *In re Dakota Rail Inc., supra; In re Roth American, Inc., supra.* The law in this district for injunctions appears to be that all four criteria must be proved by the plaintiff, *see, e.g., The Keds Corp. v. Renee Int'l Trading Corp.*, 888 F.2d 215, 220 (1st Cir.1989); *Scheidegg v. Department of the Air Force*, 715 F.Supp. 11 (D.N.H.1989), but a recent First Circuit case suggests a balancing of the four factors is appropriate in some cases. See *Concrete Mach. Co., Inc. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 611 (1st Cir.1988). I find this difference unnecessary to resolve for this decision since movant fails under either approach.

### Likelihood of Success on the Merits

■ Initially, this Court must confess that it finds it hard to conceive of many situations where a trial court could find in favor of a movant for stay relief on this factor if taken literally. The trial court in effect would be saying that it decided the case improperly and should be reversed. Human nature—judicial or otherwise—does not go that far. If the trial court really is

1. For cases establishing the standards for preliminary injunctive relief in this Circuit, see *Parenthood v. Bellotti*, 641 F.2d 1006, 1009 (1st Cir.1981); *Scheidegg v. Department of the Air Force*, 715 F.Supp. 11 (D.N.H.1989); *In re Public Serv. of N.H.*, 98 B.R. 120 (Bankr. D.N.H.).

convinced that it made a reversible error it should indicate its willingness to consider vacating its order and the appeal would become moot. Thus, what this factor must mean in actual practice is not a literal "likelihood" of success on the merits, but that movant has a "substantial case" or a "strong case on appeal". Cf. *In re Safon Ochart*, 74 B.R. 136, 137 (Bankr. D. Puerto Rico 1987). While this standard is more lenient to an appellant than is explicitly recognized in the case law to date, I believe it is inescapable as a practical matter *in the appeal context* as contrasted with the preliminary injunction context.

■ I cannot find movant has such a strong case because most of the appeal involves factual issues which are subject to the "clearly erroneous" standard of review. See *In re Navigation Technology Corp.*, 880 F.2d 1491 (1st Cir.1989). As Judge Dreher in *In re Dakota Rail, Inc.*, *supra* at 820–21, explained:

> The length of the Memorandum Decision is indicative of the factually intensive nature of the confirmation hearing, and the appeal almost exclusively raises issues regarding the accuracy of factual determinations made therein. The Court's findings of fact must be sustained on appeal unless the reviewing court concludes that they were "clearly erroneous."

\* \* \* \* \* \*

Of particular importance to my decision to confirm the Mills/Hughes Plan was my assessment of the lack of credibility of the RRA's witnesses and the credibility of the witnesses testifying on behalf of Mills/Hughes. Such assessments of credibility are especially entitled to deference on review:

> Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

Fed.R.Bankr.P. 8013. Consequently, there is little chance that Ross and RRA will prevail in their challenge to my findings of fact.

Another bankruptcy court has reached the same conclusion. See *In re Crabtree*, 113 B.R. 723 (W.D. Okla.1990) ("City Bank is unlikely to succeed in its challenge to the bankruptcy court's determination of its secured claim because this determination is largely dependent on factual findings subject to a deferential, clearly erroneous standard of review.")

In the present case, the Order and supporting Memorandum found the witnesses of Northeast Utilities to be quite credible. In response, the RKR objectors presented no witnesses, except for Richards himself, in rebuttal, and that testimony was found in many instances to be highly theoretical and not specific enough to counter the weight of the plan proponents testimony. Regarding the primary legal issue raised by the RKR objectors, to the effect that prudency alone would force inclusion of the cost of Seabrook in rate base, I continue to find no support for this position in the case law as I indicated in the memorandum opinion. Thus, on this record I do not believe appellants can show a substantial or strong case for possible reversal on appeal.[2]

### Injury to Movants

■ Movants contend that the reorganization plan may be substantially consummated by the time their appeal is decided so that the appeal will be effectively moot.

**2.** In making reference to standards on appeal and the possible result of the appeal, the bankruptcy court when presented "in the first instance" with a motion for stay on appeal is placed by Rule 8005 in the uncomfortable but inescapable posture of judging its own actions and the possible actions of an appellate court. The only comfort in this situation for the "judge judging himself" is that the appellant has a complete right to a *de novo* determination on the stay question by the appellant court. Although

two courts have stated the decision of the bankruptcy court is reversable only on a showing of abuse of discretion, see *In re Rhoten*, 31 B.R. 572, 577 (D.Tenn.1982); *In re Gleasman*, 111 B.R. 595, 599 (Bankr. W.D. Tex.1990), the provisions of Rule 8005 clearly contemplate that the District Court makes a *de novo* review, which is what some other district courts appear to be doing. See, e.g., *In re Duncan*, 107 B.R. 758 (W.D. Okla.1988).

Factually, however, the effective date has not occurred. But even if it were to occur by the time of deciding the appeal, *all* courts confronted with this argument hold it is not enough to show sufficient injury to appellant to warrant the stay. As the *In re Dakota Rail, Inc., supra,* court explained:

> Ross argues that his appeal will be mooted if the Confirmation Order is not stayed and Mills/Hughes are permitted to substantially consummate their Plan. But the mooting of his appeal is not sufficient, by itself, to establish that Ross will be injured by denying the stay. *In re Charter Co.,* 72 B.R. at 72 (citing *In re Great Barrington Fair & Amusement, Inc.,* 53 B.R. 237, 240 (Bktcy.D. Mass.1985); *In re Baldwin United Corp.,* 45 B.R. 385, 386 (Bktcy.S.D.Ohio 1984)).

### Injury to Appellees

█ It is apparent that substantial harm will occur to appellees if a stay is granted and the appeal ultimately fails. If only the massive additional interest and other delay costs set forth in the order under appeal are considered, the appellees will be significantly impaired.

Moreover, any stay would jeopardize the $1.5 billion in financing which is currently being negotiated and which makes this plan possible. The plan cannot become effective while a stay is in effect, as provided in the Plan, Article VIII, paragraph B(1). It is indeed credible that banks being asked to negotiate loans of such amounts would put such negotiations "on hold" while a stay is in effect. There also is no assurance that financing of that magnitude will again be available, at the same rates, if a stay is granted and the appeal ultimately fails.

As previously stated, the huge financing required by this plan would be severely jeopardized by a stay. Other courts have found the possible failure of any plan of reorganization as a consequence of a stay a significant injury to appellees. See, e.g., *Matter of Baldwin United Corp.,* 45 B.R. 385, 387 (Bankr. S.D. Ohio 1984) ("delay would result in the collapse of the Ameri-

trust transaction ... [and] an indefinite delay in developing a plan of reorganization."); *In re Charter Co.,* 72 B.R. 70, 72 (M.D. Fla.1987) ("the Debtors' inability to consummate the Settlement Agreement may impede consummation of the Debtors' joint plan of reorganization.")

It has also been stated that the delay caused to creditors receiving their payments is also a significant harm warranting denial of a stay. See *In re Great Barrington Fair and Amusement, Inc.,* 53 B.R. 237, 240 (Bankr. D.Mass.1985); *In re Charter Co., supra.*

### Harm to the Public Interest

In *In re Dakota Rail, Inc., supra,* at 823, the court found a stay would hurt "the public interest of continued rail service." Although the public utility involved in the present case will continue to operate, a stay would hurt the public interest in ensuring predictable rates for the great majority of electric power users in the State of New Hampshire. Presently, there is a rate agreement making rates charged to commercial, industrial and individual consumers fairly certain and affordable. A stay, however, would jeopardize any financing of a plan of reorganization, and thus make rates unpredictable. Predictability of electric power rates is a significant factor in maintaining a stable economy in the State.

### Conditional Relief/Bond

Rule 8005 provides that the court can condition relief granting a stay under the rule by "the filing of a bond or other appropriate security" with the bankruptcy court. Conditional relief by the bankruptcy court is to be "on such terms as will protect the rights of all parties in interest." In the present case any such supersedeas bond covering this appeal would have to cover massive amounts of accruing interest and other delay costs accruing monthly as indicated in the order on appeal. In view of the admitted inability of the appellants to post a bond of such magnitude the question of such conditional relief in this case does not arise.

*Conclusion*

Under Rule 8005 and the applicable case law, movants have failed to make the showing required to be granted a stay. Appellants' motion for stay of order pending appeal is denied.