**In re MIRAJ AND SONS, INC., Debtor.**

**Bankruptcy No. 94–45220–HJB.**

United States Bankruptcy Court,
D. Massachusetts.

Oct. 8, 1996.

Mark N. Polebaum, Boston, MA, for Debtor.

Robert G. Najarian, Jr., Boston, MA, for The Cadle Company.

Michael B. Katz, Chapter 11 Trustee.

## MEMORANDUM OF DECISION

HENRY J. BOROFF, Bankruptcy Judge.

Before the Court is "Creditor–Appellant Cadle Company of Ohio, Inc.'s Motion for Stay of Further Proceeding [sic] Pending Appeal" ("Cadle") (the "Stay Motion"). The Stay Motion requests that the Court, pursuant to Fed.R.Bankr.P. 8005, stay its order of September 3, 1996, confirming the Second Amended Chapter 11 Plan of Reorganization (the "Plan") filed by Miraj and Sons, Inc. (the "Debtor") as well as other proceedings in this case, pending appeal by Cadle of this Court's orders of February 16, 1996, July 3, 1996, and September 3, 1996.

## I. FACTS AND PRIOR PROCEEDINGS

The Court reports the following material facts, which facts appear to be the only thing upon which the parties have ever agreed.[1]

The Debtor is the owner of various condominium units in Townsend, Massachusetts. On November 28, 1994, the Debtor filed a voluntary petition with this Court under Chapter 11 of the Bankruptcy Code. On or about March 7, 1995, for reasons not relevant herein, attorney Michael B. Katz was appointed as the Chapter 11 Trustee (the "Trustee"). Cadle is the holder of notes from the Debtor and mortgages on certain of the units (the "Units").[2] As of the Petition Date, the total amount owed on the notes approximated $2.2 million.

On January 26, 1995, the Debtor filed its objection to the Cadle claim (the "Claims Objection"), seeking to disallow or reduce the amount owed. The Cadle claim was disputed by the Debtor on the grounds, inter alia, of an alleged offset held by the Debtor against the FDIC, Cadle's predecessor in interest.

The Debtor filed its Plan on June 5, 1995. On August 14 and 21, 1995, this Court held a combined hearing on the Claims Objection and confirmation of the Plan. On August 14, 1995, the Court found that the Debtor had met all of the standards for confirmation under 11 U.S.C. § 1129(a), except for § 1129(a)(11)[3]. As to this last requirement,

---

1. More detailed factual treatments can be found in this Court's Memorandum of Decision, dated February 16, 1996 (the "First Memorandum"), In re Miraj and Sons, Inc., 192 B.R. 297 (Bankr. D.Mass.1996), and Memorandum of Decision, dated July 3, 1996 (the "Second Memorandum"), In re Miraj and Sons, Inc., 197 B.R. 737 (Bankr. D.Mass.1996).

2. Cadle purchased the claim from the Federal Deposit Insurance Corporation (the "FDIC"), in its capacity as Receiver of The Bank For Savings.

3. 11 U.S.C. § 1129(a)(11) provides that the Court may confirm a Chapter 11 Plan only if "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the

the Court determined, without opposition from the Debtor, that the Plan as proposed could not meet the § 1129(a)(11) mandate unless the Cadle claim was reduced to no more than $950,000. Confirmation of the Plan, therefore, was deferred pending determination of the amount of the Cadle claim. The Court then held two days of trial on the Claims Objection and took the matter under advisement.

On February 16, 1996, the Court entered an interlocutory order (the "February Order")[4] and issued the First Memorandum. Pursuant to that 34–page Memorandum, the Court determined that the Debtor was entitled to offset the sum of $1,169,000, plus certain interest from March 20, 1992, against the Cadle Claim. However, the Court was unable to calculate the interest to be offset from the facts presented.[5] Therefore, the Court scheduled a further hearing in order to collect those missing facts, and to complete the confirmation hearing.

On March 19, 1996, the Court conducted that further hearing. However, the issues presented by the parties were not as the Court had anticipated. First, Cadle took the opportunity to present objections to confirmation, not previously raised. Second, through the conflicting arguments of the parties, the Court realized that it may have inaccurately set the parameters for calculation of the offset interest. Therefore, the matter was once again taken under advisement.

On July 3, 1996, the Court issued its Second Memorandum with a Supplemental and Amended Order (the "July Order").[6] Said

Order overruled the newly made objections to confirmation of the Plan and reset the parameters for the calculation of the interest to be offset against the Cadle claim. Nevertheless, the Court had *still* not received sufficient information to calculate that interest and set a further hearing ultimately held on September 3, 1996.

On September 3, 1996, with the benefit of some very limited and conditional agreements by counsel for the parties, the Court was able to fix the Cadle claims in the aggregate amount of $905,000 (the "Claims Allowance Order")[7] (the amount found in the First Memorandum to be the value of the Units). In view of that allowance being less than the Plan's feasibility cap of $950,000 for Cadle's claim, the Court also entered an order confirming the Plan (the "Confirmation Order").

On September 6, 1996, Cadle filed a notice of appeal with respect to the Confirmation Order, the Claims Allowance Order, the February Order, and the July Order (collectively the "Orders"). Contemporaneously therewith, Cadle filed the Stay Motion. On September 12, this Court held a hearing on the Stay Motion. The Court entered an interim stay, now extended through October 11, 1996, and took the matter under advisement.

## II. *DISCUSSION*

Fed.R.Bankr.P. 8005 provides in relevant part:

> A motion for a stay of the judgment, order, or decree of a bankruptcy judge, for approval of a supersedeas bond, or for other relief pending appeal must ordinarily be

---

plan." Perhaps too simply put, but sufficient for these purposes, § 1129(a)(11) requires that the Court find that the plan is feasible.

4. Cadle filed an appeal of the February Order with the District Court. On June 27, 1996, acting on a request by the Debtor to dismiss the appeal as interlocutory, the District Court (Gorton, J.) dismissed the appeal. Cadle then appealed that decision to the First Circuit Court of Appeals; however, that appeal was subsequently dismissed by agreement of the parties.

5. Neither party had calculated interest from the date ultimately selected by the Court as its beginning point.

6. Cadle appealed the July Order to the First Circuit Bankruptcy Appellate Panel (the "BAP"). It fared no better. On August 21, 1996, the BAP dismissed the appeal as interlocutory.

7. In the First Memorandum, the Court found the value of the Units to be $905,000. At the September 3, 1996 hearing, the total offset against the Cadle claim proved to be $1,435,286.35, reducing the Cadle Claim, as of the Petition Date, to $763,583.46. Although that secured claim then continued to accrue postpetition interest and attorneys fees, those additional charges were capped by the value of the Units. *See* 11 U.S.C. § 506(b); *United Sav. Ass'n v. Timbers of Inwood Forest Assoc., Ltd.,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988).

presented to the bankruptcy judge in the first instance. Notwithstanding Rule 7062 but subject to the power of the district court and the bankruptcy appellate panel reserved hereunder, the bankruptcy judge may suspend or order the continuation of other proceedings in a case under the Code or make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest.

Fed.R.Bankr.P. 8005.

██ Because of the nature of the relief sought in a motion for a stay pending appeal (i.e., a request that an act or event be halted), it is not surprising that the standards to be met for the issuance of such a stay are the same as those which must be met for the issuance of a preliminary injunction. *In re Public Serv. Co.,* 116 B.R. 347, 348 (Bankr. D.N.H.1990). The movant must demonstrate that:

(1) there is a likelihood of success on the merits of the appeal;

(2) the moving party will suffer irreparable harm if a stay is not granted;

(3) the harm to the moving party if the stay is not granted is greater than the injury to the opposing party if the stay is granted; and

(4) the public interest would not be adversely affected by the issuance of the stay.

*In re Froment,* 171 B.R. 170, 172 (Bankr. D.Mass.1994); *Public Serv.,* 116 B.R. at 348; *In re Great Barrington Fair and Amusement, Inc.,* 53 B.R. 237, 239 (Bankr.D.Mass. 1985); *see EEOC v. Astra USA, Inc.,* 94 F.3d 738, 742 (1st Cir.1996).

██ There is a difference of opinion as to whether each of the four factors must be satisfied or whether they may be balanced. *See Public Serv.,* 116 B.R. at 348 (cases cited). In this Court's view, a stay pending appeal should not be granted if any of the factors is entirely absent. For example, if the appeal is patently frivolous, or if damage to the moving party would not be irreparable if the stay were not granted, or if the relative greater damage would be visited upon the adverse party if the stay were granted, it would be inappropriate to grant the stay, even if other elements of the standard could be met. However, once established, "not all of the four conditions need be given equal weight." *Great Barrington,* 53 B.R. at 239. "These factors are not to be applied in a vacuum but instead must be viewed in light of the importance of the right of appeal and preservation of the status quo during the appeal." *In re Howley,* 38 B.R. 314, 315 (Bankr.D.Minn.1984).

This Court, therefore, moves ahead to apply the facts presented to the foregoing factors.

### A. Likelihood of Success on the Merits of the Appeal

This Court will not here try to summarize the 45 pages of findings and analysis set forth in its two Memoranda. Any summary here would not do justice to the complexities with which they dealt. Therefore, the Court incorporates herein by reference the findings of fact and conclusions of law in the First and Second Memorandum.

Of greater import is how those findings and conclusions square with the finding that the Court is asked to make as to the merits of the appeal. In *Public Service,* Chief Judge Yacos expressed his confusion as to what was expected of a trial court asked to determine the probability of its reversal by a higher court.

The trial court in effect would be saying that it decided the case improperly and should be reversed. Human nature—judicial or otherwise—does not go that far. If the trial court really is convinced that it made a reversible error it should indicate its willingness to consider vacating its order and the appeal would become moot.

116 B.R. at 348–49.

██ Instead, Judge Yacos opted for a non-literal interpretation of this factor and ruled that it was met if the court found that the movant had a "substantial case" or a "strong case on appeal." *Id.* This Court agrees. It is improbable that this Court will find that its

reversal is likely.[8] However, this factor should not be declared absent if the appellant has a substantial case.

■ The instant case was intricate. The facts were disputed and complex. The law in this area is unsettled and the application of the law to the facts was difficult. Notwithstanding this Court's confidence in the rectitude of its decision, Cadle's appeal (finally on a final order) is not frivolous. It has a substantial case. The first factor of the test is therefore minimally satisfied.

### B. *Irreparable Harm to Cadle*

Cadle argues that it will be irreparably harmed if the Plan were permitted to proceed pending appeal. It complains that, if the Plan were allowed to proceed, the Debtor could sell one or more of the Units, or pay funds to creditors with a lesser priority, thus leaving Cadle with no source from which to collect its claim. The Debtor counters by noting decisions holding that there can be no claim of irreparable harm where only money damages are at stake and a satisfactory remedy at law is available. *Foxboro Co. v. Arabian American Oil Co.*, 805 F.2d 34, 36 (1st Cir.1986); *Fisher v. Board of Selectmen*, 453 F.Supp. 881, 883 (D.Mass.1978). The Debtor also maintains that Cadle is in control of its own destiny, as it is free to withhold the discharge of its lien if individual Units are sold and it does not obtain full payment of $905,000. The Debtor also reminds the Court that the proceeds of sales not turned over to Cadle would enrich the Debtor's other assets to which Cadle could turn. In addition, Cadle may seek to recover from those parties who have guaranteed the Cadle claim.

■ The Debtor's arguments can be most charitably characterized as facetious. If the Orders are reversed on appeal, it is likely that no plan would be feasible. The Debtor's case would be converted to Chapter 7 and only Cadle's then existing collateral would be available to satisfy Cadle's claim. To the extent that Cadle's collateral had been sold in the interim and the proceeds not paid over to Cadle, Cadle's remedy would be no more than any other unsecured creditor with a deficiency claim against a Chapter 7 debtor. Furthermore, it is incorrect to state that Cadle can control dissipation of its collateral base by withholding a discharge of its lien pending receipt of $905,000. The Debtor ignores the fact that Cadle does not agree that the value of its collateral is only $905,-000. Cadle claims that the Units have a greater value. Additionally, if the Debtor can demand a discharge by paying Cadle only $905,000, the Debtor could refinance the Units, pay Cadle's reduced claim, and leave Cadle with no lien and few rights if the Orders are ultimately reversed. In that event, irreparable harm to Cadle would be certain.

### C. *Balancing the Harms*

■ Although it is clear that Cadle may be irreparably harmed if the stay is not granted, it is equally clear that the Debtor may be irreparably harmed if the stay is granted. The fortunes of business enterprises, most notably those in, or emerging from, financial difficulty, are not static. It is true that absent a final confirmation order, the Debtor will not have to pay debt service, but it is also true that the possibility of deterioration remains. Under the Plan, the Debtor was to have received a substantial cash infusion from its principals. It also intended to upgrade and sell the Units. Although the case has been pending for almost two (2) years, it is unknown how long the Debtor can tolerate the status quo. At the hearing on the Stay Motion, the Trustee warned that the Units require substantial and expensive maintenance. Cadle has the opportunity to seek a decision from at least two, or perhaps three, levels of review. In the interim, notwithstanding possible affirmance of the Orders, the Debtor will likely fail. That failure would rob other innocent parties of the benefits that would have accrued under the Plan.

---

8. To the extent that this Court would be required to make a literal finding as to whether its reversal by a reviewing court is likely, this Court can report that it has done its duty. This Court has reviewed the First Memorandum, the February Order, the Second Memorandum, the July Order, and the September 3 Orders. This Court finds itself completely persuaded by its own views. If this Court were to review itself, it would not reverse.

■ In view of the foregoing, the risk of harm appears greater for the Debtor if the stay is granted without the posting of a supersedeas bond. "It is well-established that the '[t]he reason for requiring a bond is to secure the prevailing party against any loss that might be sustained as a result of an ineffectual appeal.'" *Quarles v. Miller*, 193 B.R. 779, 782 (D.Va.1996) (citation omitted); *In re Smoldt*, 68 B.R. 533, 535–36 (Bankr. N.D.Iowa 1986). A supersedeas bond is designed to secure not only the value of the judgment, but also costs on appeal, interest, and damages for delay. *J. Perez & Cia., Inc. v. United States*, 747 F.2d 813, 815 (1st Cir. 1984); *Smoldt*, 68 B.R. at 536.

The Debtor requests that Cadle post a bond in the amount of $850,000, calculated as follows:

| | |
|---|---|
| Proposed plan dividend to unsecured creditors: | $179,000 |
| Administrative claims: | |
| Counsel to Debtor | 225,000 |
| Debtor's appraiser | 26,000 |
| Chapter 11 Trustee | 70,000 |
| Additional costs associated with the appeal process | 200,000 |
| Savings of interest associated with refinancing debt owed to another lender | 25,000 |
| Unsold Units during the appeal process | 125,000 |

In this Court's view, the amount of the bond as proposed by the Debtor is overstated. Both the proposed savings of interest upon a refinancing and the loss of sales of Units are too speculative. The Debtor may be unable to effect the partial refinancing, so close to its emergence from Chapter 11 and with a possibly debilitative appeal pending. Similarly, the loss of unsold Units is permanent only if the value of those Units decline. In addition, counsel to the Debtor is holding a prepetition retainer of approximately $40,000 against its administrative claim, reducing that claim to approximately $185,000. Finally, the costs projected for the appeal process also seem to be excessive by at least $100,000. The legal issues associated with the appeal have already been thoroughly "vetted" and should not change substantially dur-

ing different appellate levels. After effecting the foregoing reductions, the balance of $560,000 [9] should then be increased to $600,000 on account of additional fees that would be owed to the Chapter 11 Trustee, and interest that would be owed to unsecured creditors during the appellate process.

### D. *The Public Interest*

■ Cadle maintains that the public interest would be favored by the granting of the stay, because the Orders would have a negative impact on the FDIC. This Court disagrees and sees no negative impact of the Orders on the public interest. There is no evidence that the FDIC disagrees with the Orders. It does not need Cadle to protect its concerns. This is a two-party dispute. The public interest is not here implicated.

### E. *The Final Balance*

■ Balancing the four factors of the standard for the imposition of a stay pending appeal in this case is not difficult. Cadle has demonstrated a case on appeal which is substantial, even though this Court finds that success on the merits of Cadle's appeal is still unlikely. If the stay is not granted, the harm to Cadle may be irreparable, but if the stay is granted and a supersedeas bond not posted, the Debtor will likely suffer irreparable harm. The public interest is not impacted by the Court's decision here. The balance, therefore, is properly struck in Cadle's favor if a suitable bond is posted and in the Debtor's favor without a bond.

### III. *CONCLUSION*

In view of the foregoing, this Court will extend the interim stay of the Orders until October 18, 1996. On and after that date, the Motion will be deemed allowed upon Cadle posting with this Court a supersedeas bond in the amount of $600,000.

9.

| | | |
|---|---|---|
| Proposed dividend to unsecured creditors | $179,000 | |
| Administrative Claims | | |
| Counsel to Debtor | | 185,000 |
| Appraiser | | 26,000 |
| Chapter 11 Trustee | | 70,000 |
| Appeal costs | | 100,000 |