**In re Thomas K. THEOCLIS, Debtor.**

**Bankruptcy No. 97–43081–HJB.**

United States Bankruptcy Court,
D. Massachusetts.

Oct. 8, 1997.

Richard M. Pesto, Southwick, MA, Michael J.Rye, Springfield, MA.

### *MEMORANDUM OF DECISION*

HENRY J. BOROFF, Bankruptcy Judge.

Before the Court for determination is the "Debtor's Motion for Stay Pending Appeal" (the "Stay Motion"), filed by Thomas K. Theoclis (the "Debtor"). The Stay Motion seeks a stay pending appeal of this Court's order of September 18, 1997 granting a "Motion for Relief From Stay" (the "Ivanov Motion"), filed by Dimitri Ivanov and Lilia Ivanov (singly, "Mr." or "Mrs. Ivanov"; jointly, the "Ivanovs").

### I. *FACTS AND PRIOR PROCEEDINGS*

On or about August 5, 1993, the Debtor granted a mortgage to Springfield Institution for Savings (the "Bank") in property located at 42 Bliss Street in West Springfield, Massachusetts (the "Bliss Property"), as security for a loan in the original principal amount of $89,000. That loan subsequently fell into default, and the Bank scheduled a foreclosure sale for the property on May 6, 1997 at 12:00 p.m. Mr. Ivanov was the high bidder, with a bid of $45,000. On the same day, at 1:14 p.m., the Debtor commenced this case under Chapter 13.

On July 25, 1997, the Ivanovs filed the Ivanov Motion seeking relief from the auto-

matic stay under 11 U.S.C. § 362, in order to commence a summary process action against the Debtor in the state court. The Ivanovs argued that they were the owners of the Bliss Property and that the debtor refused to vacate the premises voluntarily. The Debtor filed an opposition to the Ivanov Motion, arguing that the foreclosure sale was a fraudulent transfer or was otherwise improper because (i) the sale price of $45,000 was less than the value of $80,000 believed by the Debtor to be the property's "reasonable equivalent value"; (ii) the sale was "chilled" by the auctioneer's announcement that the Bank had received information that a bankruptcy filing was possible, but no case had as yet been commenced; and (iii) the closing on the sale post-dated the bankruptcy case filing. The Court held a nonevidentiary hearing on the Ivanov Motion on August 20, 1997. At the hearing, the Court found meritless the Debtor's arguments that the sale could be overturned because of the alleged insufficiency of the sale price, or because the auctioneer had properly proclaimed the state of the bankruptcy court record. However, an affidavit of a witness (Harvey Miller) offered by the Debtor raised, in the Court's mind, a genuine issue as to when the memorandum of sale was executed relative to the time of case commencement. An evidentiary hearing was set for September 2, 1997, and later extended to September 18, 1997 on the request of the Bank.

At the evidentiary hearing, the Court took testimony from a Bank representative, the auctioneer, Harvey Miller, and the Ivanovs. After hearing the evidence, the Court concluded that (1) the auctioneer's pronouncement as to the state of the bankruptcy court record was neither improper nor chilled the sale; (2) the alleged insufficiency of the sale price (even if true) did not make the sale fraudulent; and (3) Mr. Ivanov executed the memorandum of sale (and thereby the Debtor's equity of redemption was foreclosed) before the time of case commencement (1:14 p.m. on May 6, 1997). Furthermore, at trial, two other issues were for the first time seized upon by the Debtor. First, the evidence disclosed that Mr. Ivanov had not originally registered with the auctioneer. Rather, Mr. Ivanov's sometime-partner had registered and assigned to Mr. Ivanov his right to bid. Second, the Bank ultimately conveyed the Bliss Property not to Mr. Ivanov (the successful bidder and the party to the memorandum of sale), but to Mrs. Ivanov, without the benefit of an instrument of assignment between Mr. Ivanov and Mrs. Ivanov. The Court found the first of these new issues insufficient to invalidate the sale, and the second, even if a title defect, irrelevant since (a) the Debtor's equity of redemption had been foreclosed upon at least as early as the execution of the memorandum of sale and was no longer part of the estate at the time of the closing; and (b) Mrs. Ivanov was one of the movants to the Ivanov Motion.

Based on the Court's findings and rulings of September 18, 1997, the Court granted the Ivanov Motion. The Debtor's Notice of Appeal to the District Court and Stay Motion followed.

## II. *DISCUSSION*

 It is well settled that the standards to be applied by the Court in the face of a motion to stay the effect of its order are as follows:

(1) there is a likelihood of success on the merits of the appeal;

(2) the moving party will suffer irreparable harm if a stay is not granted;

(3) the harm to the moving party if the stay is not granted is greater than the injury to the opposing party if the stay is granted; and

(4) the public interest would not be adversely affected by the issuance of the stay.

*In re Miraj*, 201 B.R. 23, 26 (Bankr.D.Mass. 1996); *In re Froment*, 171 B.R. 170, 172 (Bankr.D.Mass.1994); *In re Pub. Serv. Co.*, 116 B.R. 347, 348 (Bankr.D.N.H.1990); *In re Great Barrington Fair and Amusement, Inc.*, 53 B.R. 237, 239 (Bankr.D.Mass.1985); *see Equal Employment Opportunity Comm'n v. Astra USA, Inc.*, 94 F.3d 738, 742 (1st. Cir.1996). Allowance of the motion requires the presence of each of the foregoing factors, at least in some degree. *In re Miraj*, 201 B.R. at 26. And application by

the trial court of the first factor (likelihood of success on the merits of the appeal) is best understood as a determination that the movant has a "substantial case" or a "strong case on appeal." *Id.* at 26–27.

■ The Debtor has not demonstrated that he has a "substantial" or a "strong" case on appeal. The Debtor's complaint that the sale price was insufficient is itself deficient, without more. In the case of *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 545, 114 S.Ct. 1757, 1765, 128 L.Ed.2d 556 (1994), the Supreme Court held that the phrase "reasonably equivalent value" in 11 U.S.C. § 548(a)(2) "is the price in fact received at the foreclosure sale, so long as all the requirements of the State's foreclosure law have been complied with." Therefore, unless the Debtor is able to point out an irregularity with the sale, insufficiency of price alone is simply not enough to invalidate the sale.[1] The only defects assigned by the Debtor are the auctioneer's advice to bidders that no bankruptcy case had been filed and Mr. Ivanov's failure to personally register with the auctioneer. This Court is unable to discern a defect arising from either of those events. The auctioneer's advice to the bidders should have been a source of comfort rather than a source of concern to them. And what else should the auctioneer have done? If there was a rumor circulating of a bankruptcy case filing, would it not have caused a greater chill to the sale if the auctioneer had been completely silent on the matter? It would be a gross violation of public policy were this Court to admonish auctioneers for telling the truth. Further, Mr. Ivanov's failure to register had no impact on the sale. Even assuming that Mr. Ivanov did not properly acquire the registration right of his sometime–partner, registration with an auctioneer is a matter of personal preference and practice with auctioneers. Registration with an auctioneer is not a state requirement, nor did the Debt-

or demonstrate how Mr. Ivanov's failure to register impacted on the sale in any way.

■ The Debtor's remaining arguments go not to the sale, but to its aftermath. The Debtor complains that the parties closed after case commencement, and therefore after imposition of the automatic stay. However, the automatic stay does not apply to property unless the debtor or the bankruptcy estate has an interest therein. *See* 11 U.S.C. § 541(a)(1). It is well–settled under Massachusetts law that where a foreclosure sale is properly conducted, the redemption rights of a mortgagor terminate as early as the execution of the memorandum of sale. *Brown v. Financial Enters. Corp. (In re Hall)*, 188 B.R. 476, 482 (Bankr.D.Mass.1995); *Colletti v. Massachusetts Automatic Transmissions, Inc. (In re Massachusetts Automatic Transmissions, Inc.)*, 35 B.R. 328, 330 (Bankr. D.Mass.1983); *see also Outpost Cafe, Inc. v. Fairhaven Savings Bank*, 3 Mass.App.Ct. 1, 3, 322 N.E.2d 183, 184 (1975). Therefore, after foreclosure of the Debtor's equity of redemption, neither the Debtor nor the bankruptcy estate had any interest in the Bliss Property (other than the Debtor's limited rights as a tenant at sufferance) and, as a result, the automatic stay was inapplicable to a transfer of title. For the same reason, it is irrelevant to distinguish between Mr. and Mrs. Ivanov's rights to the Bliss Property. More importantly, the Debtor has no rights thereto.

## III. CONCLUSION

For the reasons set forth above, the Debtor has not demonstrated that it has a substantial or strong case on appeal. There is therefore no reasonable likelihood of success on the merits of the Debtor's appeal. Because the relief sought by the Debtor is unavailable absent that critical element, the

---

1. The Supreme Court stated in *Resolution Trust Corp.*:

 When [state foreclosure] procedures have been followed, ... it is "black letter" law that mere inadequacy of the foreclosure sale price is no basis for setting the sale aside, though it may be set aside (under state foreclosure law, rather than fraudulent transfer law) if the price is

 so low as to "shock the conscience or raise a presumption of fraud or unfairness".
 511 U.S. at 542, 114 S.Ct. at 1763–64 (quoting G. Osborne, G. Nelson, & D. Whitman, REAL ESTATE FINANCE LAW 9, at 469 (1979)). The Court finds that the foreclosure sale price obtained here is not so low as to meet the above-quoted standard.

requested stay pending appeal must be denied.